# Exhibit B

PAYMASTER AGREEMENT

PAYMASTER AGREEMENT, dated as of  September 17,2011 (the "Agreement"), among Archangel Trading, Archangel World Investments, Inc. through Hector Ortiz their General Manager ("Beneficiaries") and Claire C. Ambrosio (the "Paymaster")(collectively the "Parties").

WITNESSETH:

WHEREAS, the Beneficiaries have designated Paymaster to be paid by the Seller Archangel Trading for a purchase of 12,500 metric tons of Refined Cane Sugar ICUMSA 45 with pursuant to Contract dated August 22, 2011("the Purchase Agreement") with FastFoward Div. of 1411347 Ontario Ltd. and 1411347 Ontario has a Purchase Agreement dated May 4, 2011 with Buyer Sweetener's Plus, Inc., true and correct copies are attached hereto and incorporated by reference as Exhibit B. Beneficiaries have agree to supply to Buyer directly on behalf of 1411347 Ontario Ltd.

WHEREAS, the Paymaster is willing to act as a paymaster in respect of the payments due under the Agreement upon the terms and conditions hereinafter set forth;

NOW, THEREFORE, for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged by each of the parties hereto, the parties hereto, intending to be legally bound, do hereby agree as follows:

1. Appointment of Paymaster. The Parties hereby appoints the Paymaster as Paymaster in accordance with the terms and conditions set forth herein, and the Paymaster hereby accepts such appointment.

2. Deposit into the Escrow/Trust Account ("Escrow/Trust Account"). The Seller under the Agreement will deposit, or cause to be deposited, with the Paymaster's Escrow/Trust Account the Beneficiaries' commission amount ("Commission").The receipt of which amounts will be acknowledged by the Paymaster and a copy of such receipt sent to the Parties. (Commission shall be only that amount which is listed on the official receipt from the Paymaster"). Commission shall be held by the Paymaster upon the terms and conditions hereinafter set forth. The Parties know and understand that the Commission is to be deposited in the Paymaster's Trust Account and interest earned on the Amounts will not be applied to those Amounts but rather will be retained by the State Bar of California.

1

  3. Custody of the Commission. During the term of this Agreement, the Paymaster shall hold in custody the Commission.   Notwithstanding the foregoing, the Paymaster shall have the power to release all or any portion of the Commission, when required to, pursuant to Section 4 hereof.

  4. Distribution of Commission. The Paymaster shall hold the Commission in its Trust Account and distribute to the Parties as listed in Exhibit A thereof as follows:

  (a)    Notwithstanding anything else in this Section 4, no portion of the Commission shall be disbursed except in accordance with the instructions of Exhibit A attached hereto and corporate by reference.

  (b)    The Paymaster shall release the Commission (or any portion thereof) to the parties referenced in such notice within two (2) to  four (4) Business Days after the funds have cleared except for the parties listed in Sub Total 1.


  Beneficiaries hereby instruct Paymaster to make such payments as listed above and will hold harms and indemnify Paymaster from any liability including any action brought by the Seller or Seller's bank.


For purposes of this Agreement, "Business Day" shall mean any day that is not a Saturday or Sunday or a day on which banks are required or permitted by law or executive order to be closed in the State of California.

5. Resignation or Removal of Paymaster. The Paymaster may resign and be discharged from its duties hereunder at any time by giving written notice of such resignation to the Parties specifying a date when such resignation shall take effect and upon delivery of the Commission to the successor Paymaster designated by the Parties in writing. Such successor Paymaster shall become the Paymaster hereunder upon the resignation date specified in such notice.

If the Parties fail to designate a successor Paymaster within thirty (30)days after such notice, the Paymaster shall be entitled to apply to a court of competent jurisdiction for the appointment of a successor. The Paymaster shall continue to serve until its successor accepts the appointment and receives the Commission. The Parties shall have the right at any time to remove the Paymaster and substitute a new Paymaster by giving notice thereof to the Paymaster then acting. Upon its resignation and delivery of the Commission as set forth in this Section 5, the Paymaster shall be discharged of and from any and all further obligations arising in connection with this Agreement.

  6. Indemnification of Paymaster. (a) The Paymaster shall have no duties or responsibilities whatsoever with respect to the Commission except as are

2

specifically set forth herein. The Paymaster shall neither be responsible for or liable under, nor chargeable with knowledge of the terms and conditions of, any other agreement, instrument or document in connection herewith. The Paymaster may conclusively rely upon, and shall be fully protected from all liability, loss, cost, damage or expense in acting or omitting to act pursuant to any written notice, instrument, request, consent, certificate, document, letter, telegram, opinion, order, resolution or other writing hereunder without being required to determine the authenticity of such document, the correctness of any fact stated therein, the propriety of the service thereof or the capacity, identity or authority of any party purporting to sign or deliver such document. The Paymaster shall have no responsibility for the contents of any such writing contemplated herein and may rely without any liability upon the contents thereof.

(b) The Paymaster shall not be liable for any action taken or omitted by it in good faith and reasonably believed by it to be authorized hereby or with the rights or powers conferred upon it hereunder, nor for action taken or omitted by it in good faith, and in accordance with advice of counsel(which counsel may be of the Paymaster's own choosing), and shall not be liable for any mistake of fact or error of judgment or bank errors or for any acts or omissions of any kind except for its own willful misconduct or gross negligence.

(c) The Beneficiaries agree to indemnify the Paymaster and its employees, directors, officers and agents and hold each harmless against any and all liabilities incurred by it hereunder as a consequence of such party's action, and to indemnify the Paymaster and hold it harmless against any claims, costs, payments, and expenses (including the fees and expenses of counsel) and all liabilities incurred by it in connection with the performance of its duties hereunder and them hereunder, except in either case for claims, costs, payments, and expenses (including the fees and expenses of counsel) and liabilities incurred by the Paymaster resulting from its own willful misconduct or gross negligence. The provisions of this Section 6 shall survive the termination of this Agreement or resignation or removal of the Paymaster.

7. Compensation of Paymaster. For all services rendered by it hereunder the Paymaster shall be entitled to payment from the Beneficiaries in the amount of $15,000 and reasonable and customary expenses. The Paymaster shall also be entitled to reimbursement on demand for all loss, liability, damage or expenses paid or incurred by it in the administration of its duties hereunder, including, but not limited to, all reasonable counsel, advisors' and agents' fees and disbursements and all taxes or other governmental charges. At all times, the Paymaster will have a right of set off and first lien on funds in the Commission for payment of fees and expenses and all such reasonable loss, liability, damage or bank expenses.

8. Termination of Agreement. This Agreement shall terminate on the final disposition of the Commission pursuant to Section 4, provided that the rights of the Paymaster and the obligations of the other parties hereto under Sections 6 and 7

3

shall survive the termination hereof and the resignation or removal of the Paymaster.

9. Consents to Service Process. Each of the parties hereto hereby irrevocably consents to the jurisdiction of the courts of the State of California and of any State or Federal Court located in the County of Los Angeles in such State in connection with any action, suit or other proceeding arising out of or relating to this Agreement or any action taken or omitted hereunder, and waives any claim of forum non conveniens and any objections as to laying of venue. Each party further waives personal service of any summons, complaint or other process and agree that the service thereof may be made by certified or registered mail directed to such person at such person's address for purposes of notices hereunder.

10. Tax Withholding & Reporting. (a) On or prior to the date of this Agreement, the Parties, if required, for purposes of United States backup withholding tax and information reporting requirements, will provide the Paymaster with an executed copy of Internal Revenue Service form W-9 or any successor form. Paymaster will provide the Parties with 1099 tax forms at the conclusion of the Agreement or at end of each calendar year. Paymaster does not pay any taxes or provide any tax advice on behalf of the Parties

11. Miscellaneous. (a) This Agreement embodies the entire agreement and understanding among the parties relating to the subject matter hereof, and may not be changed orally, but only by an instrument in writing signed by the parties hereto.

(b) All notices and other communications under this Agreement shall be in writing and shall be deemed given when delivered personally, on the next Business Day after delivery to a recognized overnight courier or mailed first class (postage prepaid) in the case of notices or other communications sent to the Paymaster, by delivery of the original) at the following addresses (or to such other address as a party may have specified by notice given to the other parties pursuant to this provision):

> If to the Beneficiaries, to:
> Hector M Ortiz
> General Manager
> Archangel World Investment INC
> Calle Jaime de La Guardia numero 7
> San Fransisco Coco del Mar
> Panama, Republica de Panama
> 194395-1-730490 DV 46
> 507-6717-0903
> hector@archangeltrading.com

If to the Paymaster, to:

> Claire C. Ambrosio
> Attorney at Law
> 952 N. Western Avenue
> Los Angeles CA 90029

(c) This Agreement and the rights and obligations hereunder of parties hereto may not be assigned except with the prior written consent of the other parties hereto. This Agreement shall be binding upon and inure to the benefit of each party's respective successors and permitted assigns. Except as expressly provided herein, no other person shall acquire or have any rights under or by virtue of this Agreement.

(d) This Agreement may not be amended, supplemented or otherwise modified without the prior written consent of the parties hereto.

(e) This Agreement shall be governed by and construed in accordance with the laws of the State of California without reference to the principles of conflict of laws.

(f) THE PARTIES AGREE AND UNDERSTAND THE PAYMASTER IS ONLY PROVIDING PAYMASTER SERVICES AND NO LEGAL REPRESENATION OR SERVICES WILL BE PROVIDED BY THE PAYMASTER UNDER THIS AGREEMENT.

(g) This Agreement may be executed in two or more counterparts, each of which shall be an original, but all of which together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

ARCHANGEL WORLD
INVESTMENT, I.N.C.
R.U.C. 1843951-1-730490 D.V. 46

Corporate Stamp & Seal.

Beneficiary: ARCHANGEL TRADING
ARCHANGEL WORLD INVESTMENTS, INC.

By:___ _____
HECTOR M. ORTIZ
GENERAL MANAGER

CLAIRE C. AMBROSIO AS PAYMASTER

By:_____

5



**FastForward div of 1411347 Ontario Limited**

# CONTRACT OF PURCHASE AND SALE
### SELLER ISSUES THIS ELECTRONIC VERSION CONTRACT TO BE SIGNED BY BOTH PARTIES WHICH WILL HAVE LEGAL FORCE UNTIL SIGNING OF THE ORIGINAL CONTRACT

**PURCHASE AND SALE CONTRACT** FOR TWELVE **THOUSAND FIVE HUNDRED  (12,500) METRIC TONS** OF REFINED CANE SUGAR ICUMSA 45 RBU.

**CONTRACT NUMBER: ST/ /130411**
**TRANSACTION CODE: ST/ /130411 /12,5KSU**
**FCO NUMBER: ST/ /030411/SUGAR/12,500K**

*\*\*THIS CONTRACT IS CONFIDENTIAL AND CANNOT BE CIRCULATED FREELY AND IS ONLY FOR THE PURPOSE OF THIS TRANSACTION. ALL CHANGES MADE TO THE CONTRACT MUST BE INITIALED AND ARE SUBJECT TO THE SELLERS FINAL APPROVAL\*\*.*

THIS AGREEMENT IS MADE ON May 4, 2011 UNDER ICC TERMS AND CONDITIONS.

AS THE SELLER:

### SELLER

| | |
|---|---|
| *COMPANY/CORPORATION* | ***1411347 ONTARIO LIMITED c.o.b. FASTFORWARD*** |
| *REGISTRATION NO.* | |
| *COUNTRY OF REG.* | *INCORPORATED IN ONTARIO, CANADA* |
| *ADDRESS* | *33 QUEEN ST. S.* |
| *CITY* | *KITCHENER, ONTARIO* |
| *TELEPHONE* | *1-519-212-8867* |
| *EMAIL* | *Fastforwardglobal@gmail.com* |
| *REPRESENTED BY* | *Mr. Alex Ruge* |
| *TITLE/POSITION* | *MGR. COMMODITY SALES* |
| *ISSUING COUNTRY* | *CANADA* |

AS THE BUYER:

### BUYER

| | |
|---|---|
| *COMPANY/CORPORATION* | **Sweetener's Plus, Inc** |
| *REGISTRATION NO.* | |
| *COUNTRY OF REG.* | **United States** |
| *ADDRESS* | **5768 Sweeteners Blvd.** |
| *CITY / COUNTRY* | **Lakeville, NY USA** |
| *TELEPHONE* | **585-346-2318** |
| *FAX* | **585-346-2310** |
| *EMAIL* | **Mark.Whitford@sweetenersplus.com** |
| *REPRESENTED BY* | **Mark Whitford** |
| *TITLE/POSITION* | **Vice President Sales & Marketing** |
| *PASSPORT NUMBER* | |

**INTRODUCTORY VIA: STAR TRADING, ATLANTA/LENHILL INDUSTRIES**

Seller                        1                Buyer



**FastForward div of 1411347 Ontario Limited**

WHEREAS THE SELLER OR THE SELLER'S ASSIGNEE (AS MENTIONED IN CLAUSE 19) WITH FULL CORPORATE AUTHORITY AND RESPONSIBILITY CERTIFIES, REPRESENTS, AND WARRANTS THAT IT CAN FULFILL THE REQUIREMENTS OF THIS AGREEMENT, AND OWNS THE PRODUCT REFERRED TO HEREIN AND IS TO ABLE PROVIDE THE PRODUCT REFERRED TO HEREIN IN TIME AND FOR THE TERMS AGREED UPON THEREAFTER.

WHEREAS THE BUYER WITH FULL CORPORATE AUTHORITY AND RESPONSIBILITY HEREBY CERTIFIES, REPRESENTS, AND WARRANTS THAT THEY ARE READY, WILLING AND ABLE TO PURCHASE THE FOLLOWING DESCRIBED COMMODITY UNDER THE TERMS AND CONDITIONS AS SET OUT HEREUNDER, SUBJECT TO EXECUTION OF THE CONTRACT FOR THE PURCHASE OF THE SAID COMMODITY.
UPON CONSIDERATION OF THE MUTUAL AGREEMENT, PROMISE, BENEFIT AND TERMS OF THIS COMMERCIAL AGREEMENT AND VALUABLE CONSIDERATION OF THE BENEFIT WHICH IS HEREBY ACKNOWLEDGED, THE PARTIES DO HEREBY AGREE TO HONOR THE FOLLOWING TERMS AND CONDITIONS:

WHEREAS THE SELLER AGREES TO SELL AND BUYER AGREES TO BUY THE COMMODITY AS DEFINED BELOW, IN ACCORDANCE WITH THE QUANTITY IN METRIC TONS, THE PRICE GIVEN IN UNITED STATES DOLLARS, THE SPECIFICATIONS AND THE TERMS AND CONDITIONS SET OUT WITHIN THIS CONTRACT AND ALL IN ACCORDANCE WITH INCOTERMS 2000.

## ARTICLE 01 - COMMODITY

REFINED CANE SUGAR ICUMSA 45 RBU

## ARTICLE 1.1 - QUANTITY

**TWELVE THOUSAND FIVE HUNDRED  (12,500)** METRIC TONS IN A SPOT SHIPMENT  WITH A POSITIVE OR NEGATIVE WEIGHT TOLERANCE TO A MAXIMUM OF PLUS OR MINUS FIVE PERCENT (+/- 5%). THE TOTAL DELIVERED AND SHIPPED QUANTITY OF THIS AGREEMENT SHALL BE DETERMINED AND VERIFIED BY THE INSPECTING AUTHORITY AS THE COLLECTIVE WEIGHT RESULT OF BILL(S) OF LADING OF ALL SHIPMENTS THAT WERE, IN EFFECT, DELIVERED AND SHIPPED TO THE BUYER DURING THE AGREEMENT PERIOD.

## ARTICLE 02 – DDP PRICE

**UNIT PRICE:**    US$ 700.00 (SEVEN HUNDRED U.S. DOLLARS) PER METRIC TON DDP **PORT ELIZABETH, NEW JERSEY** BUYER SPECIFIED "U.S. NON-SANCTIONED" SUBJECT TO AND IN STRICT ACCORDANCE OF **ARTICLE 2** OF THIS CONTRACT.

**TOTAL CONTRACT PRICE: US$8,750,000.00** (EIGHT MILLION SEVEN HUNDRED AND FIFTY THOUSAND U.S. DOLLARS) FOR THE QUANTITY, IN METRIC TONS AS CONTRACTED FOR HEREIN,

## ARTICLE 03 – COMMODITY QUALITY AND SPECIFICATIONS

| COMMODITY | WHITE CANE SUGAR ICUMSA 45 RBU |
|---|---|
| | Attenuation index units (method # 4-1978) |
| POLARITY AT 20 DEG CENTIGRADE | 99.80 MIN. |
| SULPHATE & ASH CONTENT | 0.04% |
| MOISTURE | 0.04% |
| SOLUBILITY | 100.0% DRT AND FREE FLOWING |
| GRANULATION | FINE |
| ICUMSA | MAX. 45 ICUMSA WITH INDEX UNITS METHOD NO: 4619871 |
| SEDIMENTS | NONE |

Seller                    2            Buyer



**FastForward div of 1411347 Ontario Limited**

| COLOR | SPARKLING WHITE |
|---|---|
| CROP | 2009/2010 |
| MAGNETIC PARTICLES | MG/K 4. |
| SO2 | 20 MG/KG MAXIMUM |
| RADIATION | NORMAL W/O PRESENCE OF CESIUM OR IODINE: CERTIFIED |
| SMELL | FREE OF ANY SMELL & ALL PATHOGENS; STAPH AUREAS |
| REDUCING SUGAR | 0.05% MAX |
| SUBSTANCE | SOLID CRISTAL MAXIMUM BY WEIGHT |
| MAX AS | 1 P.P.M. |
| MAX OS | 2 P.P.M. MAXIMUM. |
| MAX CU | 3 P.P.M. |

## ARTICLE 04 – ORIGIN

THE COUNTRY OF BRASIL /SELLERS CHOICE

## ARTICLE 05- PACKING & MARKING

ALL SUGAR IS TO BE BULK OR PACKED IN TWELVE THOUSAND FIVE HUNDRED JUMBO SUPER BAGS (1,000 KG/BAG) WHICH ARE NEW POLYLINED ETHYLENE AND POLYPROPYLENE BAGS, OR INTERNATIONALLY ACCEPTABLE EQUIVLENT.  THE SELLER SHALL SUPPLY TWO PERCENT (2%) OF EMPTY BAGS AT THE SELLER'S EXPENSE. PROVISION OF THOSE SAME EMPTY BAGS SHALL BE SO STATED ON THE BILL OF LADING, INVOICE AND PACKING LIST AS "FREE OF CHARGE".   ANY ADDITIONAL PACKAGING REQUIREMENTS OF THE BUYER ARE AT ADDITIONAL COST.

## ARTICLE 06 –SHIPMENT

THE COMMODITY SHALL BE TRANS-SHIPPED FROM PANAMA IN VESSELS CONTAINING _____ CONTAINERS UNTIL THE ENTIRE AMOUNT IF DELIVERED AND SHALL BE  DELIVERED WITHIN 35-45 DAYS, OR SOONER SUBJECT TO SHIPPING AVAILABILITY AND INFRASTRUCTURAL CONDITIONS AT THE LOADING PORT AND/OR THE BUYER'S DESIGNATED PORT OF DISCHARGE.

THE SHIPMENT SHALL COMMENCE WITH IN 35-45 DAYS AFTER SELLER RECEIVE THE ACCEPTABLE PAYING INSTRUMENT FROM TOP 25 BANK.  SHIPMENT WILL COMMENCE AND COMPLETE WITHIN 45 DAYS.

THE START AND END DATES FOR SHIPMENTS WILL BE DETERMINED BY THE DATE OF RECEIPT BY THE SELLER OF AN ACCEPTABLE OPERATIVE FINANCIAL INSTRUMENT FROM THE BUYER.

## ARTICLE 07 - DESTINATION

**PORT ELIZABETH, NEW JERSEY USA**

## ARTICLE 08 – PAYMENT TERMS AND CONDITIONS :

TOTAL CONTRACT PRICE IS $8,750,000 USD (EIGHT MILLION SEVEN HUNDRED FIFTY THOUSAND US DOLLARS) FOR 12,500MT (TWELVE THOUSAND FIVE HUNDRED METRIC TONS) (+/-5%)

BUYER UNDERSTANDS THAT THEY WILL PAY FOR EACH SHIPMENT WITH AN MT 103 AT CIBC BANK UPON PRESENTATION OF SHIPPING DOCUMENTS FROM THE SELLER.

IT IS HEREBY AGREED THAT TITLE/OWNERSHIP OF THE SHIPMENT SHALL NOT TRANSFER TO BUYER UNTIL

Seller                    3          Buyer



**FastForward div of 1411347 Ontario Limited**

SELLER RECEIVES THE MT 103 IN THE TRUST ACCOUNT REFERENCED BELOW.

THE BUYER WILL HAVE FUNDS AVAILABLE AND READY FOR TRANSFER WHEN LOADING STARTS AND THIS WILL BE VERIFIABLE BY SELLER IF REQUESTED BY THE TRUST AGENT OR BANK OFFICER /MANAGER.

THIS IS A SPOT PURCHASE, THEREFORE, AN IRREVOCABLE, TRANSFERABLE,  DIVISIBLE, ASSIGNABLE, CONFIRMED AND UNCONDITIONAL SBLC MUST BE LODGED IMMEDIATELY.

ALL FINANCIAL INSTRUMENTS MUST BE ADVISED THROUGH SELLER'S BANK AND PAYABLE AT THE COUNTERS OF THE SELLER'S BANK.

THE TEXT OF THE FINANCIAL INSTRUMENT(S) MUST BE SENT BY THE BUYER'S BANK FOR APPROVAL OF THE SELLER'S BANK.  CONFIRMATION OF THE FINANCIAL INSTRUMENTS WILL BE TO THE ACCOUNT OF THE APPLICANT.

## ARTICLE 08.1 – FINANCIAL INSTRUMENT'S MAJOR TERMS

BUYER'S BANK WILL GET ITS INSTRUCTION FROM THE BUYER DIRECTLY TO ISSUE THE FINANCIAL INSTRUMENT. SUCH INSTRUCTION SHALL BE WITHIN THIS CONTRACT TERMS AND CONDITIONS.

CHARTER PARTY BILL OF LADING AND OR THIRD PARTY DOCUMENTS ARE ACCEPTABLE.
PARTIAL SHIPMENT(S) IS ALLOWED, TRANSSHIPMENT THROUGH PANAMA AND RELOADING INTO 40' CONTAINERS SHALL BE ALLOWED.

SHIPPING DOCUMENTS PRESENTED WITHIN FIFTEEN (15) DAYS AFTER BILL OF LADING DATE BUT WITHIN FINANCIAL INSTRUMENT'S VALIDITY ARE ACCEPTABLE.

QUANTITY AND AMOUNT OF FINANCIAL INSTRUMENT PLUS OR MINUS FIVE PERCENT (+/-5%) ALLOWED.

FINANCIAL INSTRUMENT TO REQUEST CORRESPONDENT / CONFIRMING BANK, IF ANY, TO ADD ITS CONFIRMATION.

ALL BANKING CHARGES AND COMMISSIONS RELATING TO THE ISSUANCE OF THE FINANCIAL INSTRUMENT INCLUDING CONFIRMATION FEES ARE FOR THE BUYER ACCOUNT.

FINANCIAL INSTRUMENT'S AMENDMENT CHARGES WILL BE AT THE FAULTY PARTY'S ACCOUNT.

MISCELLANEOUS:
    CARBON COPIES CANNOT BE USED AND WILL NOT BE ACCEPTED
    DOCUMENTS OTHER THAN ENGLISH LANGUAGE ARE NOT ACCEPTABLE

## ARTICLE 09 - PERFORMANCE BOND

A PERFORMANCE BOND OF 2% WILL BE ISSUED BY THE SELLER FOR THE FINANCE INSTRUMENT VALUE ACCEPTED BY THE SELLER AND SELLERS BANK.

## ARTICLE 10 - SHIPPING DOCUMENTS

Seller                     4              Buyer



**1411347 ONTARIO LTD**

AFTER SHIPPING THE COMMODITY, SELLER SHALL OBTAIN, TRANSMIT, AND LODGE THE FOLLOWING DOCUMENTS AT THE SELLER'S BANK, IN EACH CASE IN A FORM SATISFACTORY TO THE SELLER'S BANK ALL OF WHICH WILL BE IN TURN FORWARDED TO THE BUYER'S BANK:

**SIGNED COMMERCIAL INVOICE** IN THREE (3) ORIGINALS AND TWO (2) COPIES, INDICATING CONTRACT NUMBER, DESCRIPTION OF THE GOODS, UNIT PRICE AND TOTAL VALUE, GROSS/NET WEIGHT, AND SHIPPING TERMS (CIF), AND OCEAN BILL OF LADING NUMBER;

THREE (3) ORIGINAL & THREE (3) NON-NEGOTIABLE COPIES OF **CLEAN ON BOARD BILL OF LADING** (HEREINAFTER KNOWN AS "B/L"), MARKED "FREIGHT PREPAID" AS PER CHARTER PARTY CONTRACT, ISSUED "TO THE ORDER OF SELLER", BANK ENDORSED AND "NOTIFY BUYER"; AND

**PACKING LIST** IN ONE (1) ORIGINAL AND THREE (3) COPIES, INDICATING GROSS & NET WEIGHT; AND

**SGS CERTIFICATE OF WEIGHT** (WHICH INDICATES NET WEIGHT, DATE AND PLACE OF ISSUANCE), **GRADE, QUALITY, AND CONDITION** OR ANALOGOUS ORGANIZATION AT THE PORT OF LOADING, ONE (1) ORIGINAL AND THREE (3) COPIES; AND

**CERTIFICATE OF ORIGIN**, ISSUED BY OR ENDORSED BY THE RELEVANT GOVERNMENT AUTHORITY OR THE CHAMBER OF COMMERCE FROM THE COUNTRY OF ORIGIN, ONE (1) ORIGINAL AND THREE (3) COPIES; AND

**PHYTOSANITARY CERTIFICATE** ISSUED BY SGS OR ISSUED AND ENDORSED BY THE LOCAL AUTHORIZED GOVERNMENT AGENCY, WHICH DECLARES THE SUGAR IS FIT FOR HUMAN CONSUMPTION, AND CERTIFIES THE SUGAR BEING SHIPPED IS FREE OF QUARANTINE PESTS AND GENERALLY CONFORMS TO THE PHYTOSANITARY REQUIREMENTS OF THE COUNTRY OF DESTINATION, ONE (1) ORIGINAL AND THREE (3) COPIES; AND

**LOADING SUPERVISION CERTIFICATE** ISSUED BY SGS CERTIFYING THAT THE CORRECT SHIPMENT HAS BEEN LOADED ON BOARD THE VESSEL, AND AN OFFICIAL **STOWAGE EXAMINATION CERTIFICATE** ISSUED BY SGS STATING THAT VESSEL HOLDS STOWAGE AREAS WERE DULY EXAMINED PRIOR TO LOAD AND ARE FOUND SUBSTANTIALLY CLEAN AND FREE FROM RUST SCALE AND RESIDUE, WEEVILS AND LIVE INSECTS AND SUITABLE TO STORE OR CARRY BAGGED SUGAR INTENDED FOR USE AS AN EDIBLE PRODUCT, ONE (1) ORIGINAL AND THREE (3) COPIES; AND

**CERTIFICATE OF RADIATION** LEVEL ISSUED OR CERTIFIED BY SGS DECLARING THE PRODUCT RADIATION LEVEL AS NORMAL, ONE (1) ORIGINAL, AND ONE (1) COPY; AND

SELLER'S NOTARIZED STATEMENT THAT COMMERCIAL INVOICE HAS NOT BEEN INCLUDED WITH THE SHIPMENT OF THE GOODS, ONE (1) ORIGINAL; AND

**CROP CERTIFICATE** ISSUED BY SELLER CONFIRMING THE PRODUCT IS FRESH FROM THE LATEST HARVEST SEASON AND THE YEAR OF PRODUCTION IS NOT EARLIER THAN 2008 FIT FOR HUMAN CONSUMPTION; AND THE STOCK IS OF FAIR AND MERCHANTABLE QUALITY, ONE (1) ORIGINAL AND THREE (3) COPIES; AND

**SHIPPING COMPANY STATEMENT** IN ONE (1) ORIGINAL AND THREE (3) COPIES CONFIRMING THAT;

A) COPY OF THE BILL OF LADING, PHYTOSANITARY CERTIFICATE, AND CERTIFICATE OF ORIGIN WERE DELIVERED TO THE CARE OF THE VESSEL MASTER, AND

Seller        5        Buyer

Case 6:11-cv-01799-JA-DAB   Document 1-5   Filed 11/14/11   Page 12 of 25 PageID 54




**FastForward div of 1411347 Ontario Limited**

B) THE VESSEL AGE IS NOT ABOVE TWENTY (20) YEARS (OR SELLER WILL BEAR THE INSURANCE PREMIUM FOR EXCESS COVERAGE COSTS) AND MUST BE CLASSIFIED 100 A-1 WITH LLOYD'S REGISTER OR BE OF EQUIVALENT CLASSIFICATION AND ENTERED WITH PROTECTION AND INDEMNITY CLUB.

EXCEPTING THE SELLER'S INVOICE, THIRD PARTY DOCUMENTS ARE ACCEPTABLE TO BOTH PARTIES.

### ARTICLE 11 – BANKING DETAILS

ALL FINANCIAL INSTRUMENTS ARE TO BE ADVISED TO THE BENEFICIARY THROUGH AND DOMICILED AT THE BANK SPECIFIED BELOW.

### ARTICLE 11.1 - SELLER'S BANK

| | SELLER |
|---|---|
| Account's name | 1411347 ONTARIO LIMITED (US ACCOUNT) |
| Bank Name | CIBC |
| Account Number | 00152 010 0247111 |
| SWIFT Code | CIBCCATT |
| Bank Officer | CORAL JENKINS |
| Bank Phone | 519-7424432 EXT 226 |
| Bank Fax | |

### ARTICLE 11.2 - BUYER'S BANK

| | BUYER |
|---|---|
| BANK NAME | |
| ADDRESS | |
| CITY / COUNTRY | |
| ACCOUNT NAME | |
| ACCOUNT NUMBER | |
| SWIFT CODE | |
| BANKING OFFICER | |
| BANK OFFICER'S EMAIL | |
| TELEPHONE NUMBER | |
| FAX NUMBER | |

### ARTICLE 11.3 - ALTERNATE CORPORATE BANK ACCOUNTS

DUE TO THE DIFFERENT BANKING REGULATIONS AND PRACTICES AROUND THE WORLD, VARIOUS BANKING INSTRUMENTS ARE ACCEPTED BY SOME BANKS IN SOME COUNTRIES AND NOT ACCEPTED BY OTHERS. DEPENDING UPON THE FINANCIAL INSTRUMENT FINALLY ISSUED BY THE BUYER TO THE

Seller _____    6    Buyer



**FastForward div of 1411347 Ontario Limited**

SELLER, IN ORDER TO FACILITATE THE TRANSACTION, IT MAY BE NECESSARY FOR THE SELLER TO USE A BANK OTHER THAN THAT ORIGINALLY DESIGNATED. ***DIRECT CONTACT WITH ANY BANK DESIGNATED BY THE SELLER WITHOUT FIRST GAINING WRITTEN PERMISSION FROM AN OFFICER OF THE SELLER WILL RENDER THIS CONTRACT NULL AND VOID.***

### ARTICLE 12 - CONTRACT PROCEDURES:

1. THE BUYER ISSUES SELLER THEIR PURCHASE ORDER (done)

2. THE SELLER REVIEWS THE LOI AND UPON ACCEPTANCE ISSUES DRAFT CONTRACT TO BUYER FOR COMMENTS AND ACCEPTANCE, THE BUYER SIGNS AND RETURNS THE DRAFT CONTRACT SHOWING ALL AMENDMENTS REQUIRED INITIALED AND ADDS THEIR FULL BANKING COORDINATES, CONFIRMING BANKING INFORMATION AND CONTACT INFORMATION.

3. THE SELLER, AFTER DISCUSSING AND FINALIZING ALL AMENDMENT WITH THE BUYER ON PHONE OR E-MAIL, AMENDS WHERE NECESSARY THE CONTRACT, AND SIGNS, SEALS AND ISSUES TO THE BUYER A FINAL COPY OF THE CONTRACT FOR ITS COMPLETION.

4. BEFORE FINAL CONTRACT WITH OUR BANKING IS ISSUED, BUYER SENDS A LETTER FROM HIS BANK STATING THAT THEY HAVE THE ABILITY TO OPEN A STAND BY LETTER OF CREDIT (SBLC) IN THE AMOUNT STATED IN THE CONTRACT. A COPY OF THE TEXT OF THE LETTER OF CREDIT IS NEEDED FOR APPROVAL BY A REPRESENTATIVE OF THE SELLER AFTER THE FINAL CONTRACT HAS BEEN SIGNED AND RETURNED.

5. THE BUYER REVIEWS THE FINAL CONTRACT AND UPON ACCEPTANCE SIGNS THE FINAL COPY CONTRACT AND RETURNS IT TO THE SELLER. IF FURTHER REVISIONS ARE REQUIRED THEY ARE NOTED AND SENT BACK TO THE SELLER FOR FURTHER REVIEW. ANY FACSIMILE OR ELECTRONIC COPY SHALL BE CONSIDERED AS THE ORIGINAL

6. UPON RECEIPT OF THE ACCEPTED SIGNED AND SEALED FINAL CONTRACT FROM THE SELLER VIA EMAIL, BUYER WILL PRINT A COPY OF THE CONTRACT AS A HARD COPY, SIGN IT AND RETURN VIA COURIER TO THE SELLER'S MAILING ADDRESS ON THE CONTRACT. SELLER WILL THEN SEND THREE (3) HARD COPIES TO THE BUYER OF THEIR FINAL CONTRACT SIGNED AND SEALED.

7. WITHIN TEN (10) BANKING DAYS BUYER SHALL ISSUE THE FINANCIAL INSTRUMENT WHICH WILL BE NON OPERATIVE AND WILL COME OPERATIVE WITH THE ISSUANCE OF PROOF OF PRODUCT (POP) AND PERFOMANCE BOND (PB) BANK TO BANK.

8. WITHIN TEN (10) BANKING DAYS AFTER RECEIPT OF FINANCE INSTRUMENT ACCEPTABLE TO THE SELLER AND THE SELLERS BANK THE SELLER PROVIDES PROOF OF PRODUCT AND PB-2% TO THE BUYER.

9. DELIVERY AND SHIPMENT SHALL COMMENCE AFTER THE FULFILLMENT OF THE PROCEDURE, STATED ABOVE, AS PER THE TERMS AND CONDITIONS OF THIS CONTRACT

### ARTICLE 13 - TERMS OF DELIVERY

Seller                                        7                    Buyer



**1411347 ONTARIO LTD**

## ARTICLE 13 - TERMS OF DELIVERY

THE DATE OF THE BILL OF LADING SHALL BE CONSIDERED THE DATE OF THE SHIPMENT AND DELIVERY.
THIRD PARTY BILL OF LADING SHALL BE ACCEPTABLE.

TERMS AND CONDITIONS OF THE CHARTER PARTY SHOULD COMPLY WITH THE TERMS AND CONDITIONS
AS CONTAINED HEREIN. SHOULD ANY TERMS OR CONDITIONS OF THE CHARTER PARTY CONFLICT WITH
THIS CONTRACT, THE TERMS AND CONDITIONS WITHIN THIS CONTRACT SHALL PREVAIL.ANY DISPUTES
BETWEEN SHIP OWNERS AND CHARTERERS' SHALL NOT DELAY THE DELIVERY OF THE CARGO.

ALL EXPORT EXPENSES INCLUDING BUT NOT LIMITED TO: EXPORT LICENSE, IF ANY, EXPORT TAXES,
LEVIES, ANY OTHER DUTIES, TARIFFS, APPLICABLE TAXES, DISPATCH DUTIES; PAYMENT OF ANY KIND ON
CARGO TO AUTHORITIES OR GOVERNMENT OF THE COUNTRY OF EXPORTATION TO WHICH THE GOODS
ARE LOADED, CONSULAR FEES, CUSTOMS, IMPORT CLEARANCE, ANY NECESSARY DOCUMENTATION
IMPOSED BY THE COUNTRY OF EXPORTATION, LOADING AND ANY RELATED EXPENSES AT LOADING
PORT ARE FOR THE ACCOUNT OF THE SELLER, AND ARE THE SOLE RESPONSIBILITY OF THE SELLER.

ALL IMPORT EXPENSES INCLUDING BUT NOT LIMITED TO: IMPORT LICENSE, IF ANY, IMPORT TAXES,
LEVIES, ANY OTHER DUTIES, TARIFFS, APPLICABLE TAXES, DISPATCH DUTIES; PAYMENT OF ANY KIND ON
CARGO BY AUTHORITIES OR GOVERNMENT OF THE COUNTRY OF DESTINATION TO WHICH THE GOODS
ARE DELIVERED, ARE FOR THE ACCOUNT OF THE SELLER. DISCHARGING AND ANY RELATED EXPENSES
AT DISCHARGE PORT/PIER ARE FOR THE ACCOUNT OF THE SELLER AND ARE THE SOLE RESPONSIBILITY
OF THE SELLER TO UNLOAD CONTAINERS OFF IMPORT VESSEL FOR DELIVERY TO BUYERS PIER DRYAGE
AGENTS. NOTE: BECAUSE THE SUGAR IMPORTED INTO THE UNITED STATES FALLS UNDER THE EXISTING
QUOTA,BUYER ANTICIPATES THERE WILL BE NO DUTY CHARGES TO THEM, AND THAT THE SELLER WILL
COVER ANY AND ALL DUTIES PAYABLE TO THE US CBP THAT ARE ASSOCIATED WITH THE SAID
TRANSACTION, AND THE SELLER WILL COVER ALL DUTIES, IMPORT USER FEES, AND HARBOUR
MAINTENANCE AND OTHER FEES APPLICABLE AND LEVIED BY US CBP ON REFINED CANE SUGAR-ICUMSA
45 UNDER ITS IMPORT TARIFFS HTSUS COVERING THE OCEAN CARGO IMPORTS INTO THE COMMERCE OF
THE UNITED STATES OF AMERICA.

THE BUYER WILL BE RESPONSIBLE TO MAKE THE US CUSTOMS ENTRY IN ITS NAME, USE ITS IMPORT
CUSTOMS BOND, AND PAY ALL CLEARANCE AND US CUSTOMS FORMALITIES, SUCH AS CONSULAR FEES,
CUSTOMS ENTRY AND IMPORT CLEARANCE FEES, ANY AND ALL NECESSARY CUSTOMS ENTRY FILING
DOCUMENTATION IMPOSED BY THE COUNTRY OF DESTINATION. FURTHERMORE THE BUYER WILL PAY
THE DRYAGE FROM THE PORT OF ELIZABETH PIERS. WAREHOUSING AND HANDLING IN THE PORT,
RETURNING THE EMPTY OCEAN CONTAINER TO THE DESIGNATED OCEA CARRIER DEPOT AND ALL
INLAND TRANSPORTATION TO ITS DOOR IN LAKEVILLE, NEW YORK. USA..

THE BUYER SHALL PROVIDE AN AFFIDAVIT CERTIFICATE WARRANTING THAT THEY GUARANTEE AT
THEIR OWN EXPENSE AND AT THE RISK OF PENALTY TO HAVE PROPER IMPORT PERMISSION ARRANGED
PRIOR TO VESSEL DEPARTURE, IF APPLICABLE.

INSURANCE: THE SELLER, AT THE SELLER'S EXPENSE SHALL INSURE THE CARGO FOR ONE HUNDRED AND
TEN PERCENT (110%) OF THE REPLACEMENT COST FOR THE CARGO FOR EACH SHIPMENT, IN FAVOUR OF
THE BUYER. THIS WILL BE AN ALL-RISK MARINE POLICY, ISSUED BY A FIRST CLASS INSURANCE
COMPANY.

PRE-ADVICE OF SHIPMENT: APPROXIMATELY FIVE (5) DAYS BEFORE LOADING COMMENCES, THE SELLER
SHALL INFORM THE BUYER BY CABLE, TELEX, EMAIL OR FAX OF THE CONTRACT NUMBER, NAME OF
COMMODITY, NAME OF VESSEL, FLAG OF VESSEL, NAME OF LOADING PORT AND ESTIMATED SAILING
DATE AND CONFIRM THAT THE VESSEL IS NOT OLDER THAN TWENTY (20) YEARS AND IS CLASSIFIED AT
LLOYDS 100-A-1 OR OF EQUIVALENT CLASS OF OTHER RECOGNIZED CLASSIFICATION SOCIETY.

Seller              8        Buyer



FastForward div of 1411347 Ontario Limited

SELLER WILL ADVISE THE BUYER OF THE NAME OF THE CHARTERED VESSEL, HER PLACE, AND POSITION, TEN (10) DAYS BEFORE THE VESSEL'S ARRIVAL AT THE LOADING PORT.

WITHIN SEVENTY TWO (72) HOURS AFTER THE VESSEL'S DEPARTURE FROM THE PORT OF LOADING, THE SELLER'S SHIPPING AGENT AND/OR THE MASTER OF THE VESSEL, SHALL NOTIFY THE BUYER OR HIS AUTHORIZED AGENT AT DESTINATION PORT OF THE FOLLOWING BY WAY OF TELEX/FAX/CABLE/E-MAIL: THE NAME OF THE NOMINATED VESSEL, IT'S FLAG AND STEAMSHIP COMPANY, TONNAGE, THE VESSEL'S SAILING DATE AND ESTIMATED TIME OF ARRIVAL (HEREINAFTER KNOWN AS "ETA") AT THE DISCHARGE PORT, THE OCEAN BILL OF LADING NUMBER, CONTRACT NUMBER, NET QUANTITY LOADED, NUMBER OF HATCHES / CRANES / DERRICKS.

ALL CHARGES AT THE PORT OF UNLOADING ARE FOR THE BUYER'S ACCOUNT. ANY TAXES OR LEVIES AT THE LOADING PORT ARE ON THE SELLER'S ACCOUNT.

SELLER SHALL PROVIDE WRITTEN ALERT TO BUYER WITHIN TWENTY-FOUR (24) HOURS AFTER RECEIPT OF NOTICE THAT VESSEL TRANSPORTING COMMODITY HAS EXPERIENCED DAMAGE, PERIL, LOSS, BREAKDOWN, OR ACCIDENT.

THE MINIMUM DISCHARGE RATE SHALL BE ONE THOUSAND FIVE HUNDRED (1,500) METRIC TONS AVERAGE MINIMUM PER WEATHER WORKING DAY OF TWENTY-FOUR (24) CONSECUTIVE HOURS AND BE IN ACCORDANCE WITH THE DISCHARGING PORT CAPACITY. THE TIMES PRECEDING TO 08:00 HOURS ON THE DAY SUCCEEDING ANY HOLIDAYS ARE EXCLUDED, EVEN IF USED. WHETHER IN BERTH OR NOT, (WIBON), WHETHER IN PORT OR NOT, WHETHER IN FREE PRACTICE OR NOT, WHETHER CUSTOMS CLEARED OR NOT, (WCCON). VESSEL HATCH OPENING AND CLOSING SHALL BE PERFORMED UNDER BUYER RESPONSIBILITY, CONTROL AND ACCOUNT.

SHOULD THE VESSEL BE DISCHARGED AT A RATE GREATER THAN THE AVERAGE, NO DELAY SHALL BE PAYABLE. IN THIS CASE SELLER SHALL PAY THE DISPATCH IN RELATION TO DELAY IN THE SAME WAY.

SHOULD THE VESSEL BE DISCHARGED AT A RATE LESS THAN THE AVERAGE, THE BUYER WILL PAY TO THE SELLER DELAY AT THE CHARTER PARTY'S STATED RATE PER RUNNING DAY AND THE PRO-RATED SHARE FOR ANY PORTION OF SUCH RUNNING DAY.

DEMURRAGE AND DISPATCH RATES ARE TO BE DETERMINED AS PER THE GOVERNING CHARTER PARTY AT TIME OF VESSEL'S NOMINATION. SELLER WILL PROVIDE THE BUYER WITH FIXED DEMURRAGE AND DISPATCH RATE.

STANDARD DEMURRAGE AND DISPATCH AT DESTINATION PORT SHALL BE ESTIMATED AT US$16,000 (SIXTEEN THOUSAND UNITED STATES DOLLARS) AND US$8,000 (EIGHT THOUSAND UNITED STATES DOLLARS) PER DAY RESPECTIVELY FOR VESSELS OF TWENTY FIVE THOUSAND (25,000) METRIC TONS, PRO RATA THEREAFTER. THE DEMURRAGE AND DISPATCH MONEY WILL BE PAID AGAINST NOTICE SIGNED BY THE OWNER OR MASTER OF THE VESSEL OR THE SELLER'S REPRESENTATIVE AND ALSO AGAINST PRESENTATION OF A WRITTEN ACCOUNTING OR ACTUAL STATEMENT OF FACTS WITHIN THIRTY (30) DAYS. PAYMENT WILL BE APART FROM THE FINANCIAL INSTRUMENT. SELLER AGREES TO OFFSET BUYER'S DEMURRAGE CHARGES COVERING ADDITIONAL DAYS UP TO 10.

IT IS AGREED THAT THE DELAY OR SPEED OF DISPATCH BE SETTLED BY THE BUYER AND THE SELLER WITHIN THIRTY (30) DAYS FROM RECEIPT OF THE VESSEL'S MASTER INVOICE. VESSEL MASTER SHALL ISSUE MASTER INVOICE WITHIN SIX (6) STANDARD BUSINESS HOURS. DELAY AND DISPATCH AT DESTINATION PORT SHALL BE AS PER PORT CHARGES PER DAY. THE DELAY AND DISPATCH MONEY WILL

Seller           9          Buyer



**FastForward div of 1411347 Ontario Limited**

BE PAID AGAINST NOTICE SIGNED BY THE OWNER OR MASTER OF THE VESSEL AND ALSO AGAINST PRESENTATION OF A WRITTEN ACCOUNTING OR ACTUAL STATEMENT OF FACTS WITH THIRTY (30) DAYS AS GIVEN AFORE.

LIGHTERAGE/LIGHTENING, DUE TO INSUFFICIENT DRAFT SHALL ALL BE FOR THE BUYER'S ACCOUNT. ALL LIGHTERAGE OPERATIONS SHALL BE CONDUCTED UNDER THE VESSEL MASTER'S APPROVAL AND SUPERVISION.

IF BUYER FAILS TO PAY DELAY CHARGES FOR ANY SHIPMENT UNDER THIS CONTRACT, SELLER SHALL, WITHOUT INCURRING BREACH OF CONTRACT, HAVE THE RIGHT TO DELAY OR TERMINATE FURTHER SHIPMENT (S) UNTIL ANY PAST DUE DELAY IS PAID BY UNCONDITIONAL SWIFT WIRE.

SHOULD THE VESSEL BE REQUIRED TO SHIFT FROM ONE BERTH TO ANOTHER AT PORT OF DISCHARGE THE EXPENSE IN SHIFTING SHALL BE FOR THE BUYER'S ACCOUNT. ACTUAL TIME UTILIZED IN MOVING FROM THE ANCHORAGE/WAITING AREA TO BERTH NOT TO COUNT AS LAYTIME UNLESS VESSEL IS ALREADY DELAYED. IF VESSEL IS UNABLE TO PROCEED TO BERTH WHEN AVAILABLE DUE TO TIDE, PILOT AVAILABILITY, PORT AUTHORITY RESTRICTIONS, AND/OR OTHER REASONS BEYOND OWNER'S CONTROL, TIME COUNT AS LAYTIME UNTIL VESSEL IS UNDERWAY TO BERTH.

FUMIGATION OF CARGO, AT PORT OF DESTINATION, IF REQUIRED BY BUYER/CARGO RECEIVERS, SHALL BE FOR THE BUYER'S ACCOUNT, INCLUDING BUT NOT LIMITED TO ACCOMMODATION / VICTUALING TRANSPORT FOR VESSEL CREW IF ORDERED BY PORT AUTHORITIES TO GO ASHORE. ANY TIME USED FOR CARGO FUMIGATION TO COUNT AS LAYTIME.

BUYERS AND THEIR CARGO RECEIVERS ARE FULLY RESPONSIBLE FOR ARRANGING ALL NECESSARY IMPORT/CUSTOM FORMALITIES INCLUDING IMPORT LICENSE AS WELL AS ARRANGEMENT FOR TAKING DELIVERY OF CARGO PRIOR TO THE VESSEL'S ARRIVAL, INCLUDING INCOMPLETE IMPORT FORMALITIES, OR NO STORAGE FACILITIES, OR NO TRANSPORT ARRANGEMENTS, OR IN THE EVENT CUSTOMS OR PORT AUTHORITIES DO NOT ALLOW DISCHARGE TO COMMENCE OR HALT.

DISCHARGE RATE PER DAY WILL BE PROVIDED BY THE BUYER AT THE PORT OF UNLOADING AT THE EXPENSE OF THE BUYER.

DISCHARGE DUE TO BUYER'S OR THEIR CARGO RECEIVERS FAILURE TO ARRANGE OR COMPLETE THESE FORMALITIES. THE BUYERS MUST PAY THE DELAY AND ANY OTHER ASSOCIATED COSTS, INCLUDING BUT NO LIMITED TO SHIFTING COSTS INCURRED TO THE SELLER'S/VESSEL'S OWNER'S BEFORE DISCHARGING CAN COMMENCE OR CAN RECOMMENCE.


**ARTICLE 14 - DISCHARGING TERMS**

THE CAPTAIN OF THE DELIVERING VESSEL SHALL SEND A CABLE/FAX TO BUYER 72/36/24 HOURS INTERVALS BEFORE ARRIVAL AT PORT OF DESTINATION TO CONFIRM THE ESTIMATED TIME OF ARRIVAL ("ETA").

PORT OF DESTINATION TIME SHALL BEGIN 24 HOURS AFTER PRESENTATION OF THE NOTICE OF READINESS ("NOR") NOTIFYING CONSIGNEE OR 1ST AGENT NOT INCLUDING THE ALLOWANCES FOR PUBLIC HOLIDAYS.

Seller      10      Buyer



FastForward div of 1411347 Ontario Limited

BUYER SHALL BE RESPONSIBLE FOR ARRANGING AND ASSURING THAT THE VESSEL WILL BE OFF-LOADED AT THE MINIMUM DISCHARGE RATE SPECIFIED WITHIN THIS CONTRACT AND THAT THIS IS IN ACCORDANCE WITH THE DISCHARGING PORT CAPACITY.

BUYER SHALL BEAR ALL COSTS AT PORT OF DESTINATION FOR INSURANCE, DELAY AT DISCHARGE PORT, DISPATCH DUTIES, TAXES, DUTIES AND OTHER CHARGES OR PAYMENTS LEVIED AGAINST THE CARGO AND ITS HANDLING AND DISCHARGE COSTS BY THE PORT AUTHORITIES OR GOVERNMENT AGENCIES OF COUNTRY OF DESTINATION TO WHICH THE GOODS ARE DELIVERED.

## ARTICLE 15 - INSPECTION

THE COMMODITY IS TO BE INSPECTED AT PORT OF LOADING BY SOCIETE GENERALE DE SURVEILLANCE (SGS) AT SELLER'S COST. SGS SHALL INSPECT THE RESPECTIVE VESSEL(S) AND SHALL ISSUE ITS CERTIFICATES AS SET OUT IN ARTICLE – 10. THIS CERTIFICATION SHALL BE DEEMED TO BE FINAL AND BINDING ON BOTH PARTIES AND SHALL NOT BE THE SUBJECT OF ANY DISPUTE, SAVE FOR MANIFEST ERROR.UPON COMPLETION OF EACH VESSEL'S INSPECTIONS AS REQUIRED, SELLER WILL PROVIDE A FULL SET OF NON-NEGOTIABLE COPIES OF ALL THE SHIPPING DOCUMENTS AS DEFINED IN THIS CONTRACT AND IN THE BUYER'S FINANCIAL INSTRUMENT TO BUYER BY EXPRESS COURIER.

## ARTICLE 16 – INCOTERMS / INSURANCE

IN ACCORDANCE WITH CIF CONDITIONS (ICC RULES – INCOTERMS 2000), INSURANCE IS FOR THE SELLER'S ACCOUNT AND IS THE SELLER'S SOLE RESPONSIBILITY TO BE ISSUED IN THE NAME OF THE BUYER.

ALL RISK MARINE INSURANCE POLICY CERTIFICATE WILL BE PROVIDED FOR ONE HUNDRED AND TEN PERCENT (110%) OF THE REPLACEMENT COST OF THE CARGO FOR EACH SHIPMENT.

ALL SHIPMENTS TO BE EFFECTED BY VESSELS OF TWENTY (20) YEARS OF AGE MAXIMUM. THE CARRYING VESSEL TO BE FULLY COVERED FOR PROTECTION & INDEMNITY RISK (P&I) WITH AN INTERNATIONAL GROUP (OR EQUIVALENT) P&I CLUB. THE P&I INSURANCE CERTIFICATE SHOULD BE PROVIDED THROUGH FACSIMILE TRANSMISSION.

TITLE TO THE PRODUCT SHALL PASS TO THE BUYER UPON RECEIPT OF PAYMENT OF SELLER'S INVOICE. RISK OF LOSS OR DAMAGE TO THE PRODUCT TO PASS FROM SELLER TO BUYER AT THE LOADING PORT. THIS SHALL BE SUBJECT TO INCOTERMS 2000.

## ARTICLE 17 - FORCE MAJEURE

NEITHER PARTY TO THIS CONTRACT SHALL BE HELD RESPONSIBLE FOR BREACH OF CONTRACT CAUSED BY AN ACT OF GOD, INSURRECTION, CIVIL WAR, MILITARY OPERATIONS OR LOCAL EMERGENCIES. THE PARTIES DO HEREBY ACCEPT THE INTERNATIONAL PROVISION OF "FORCE MAJEURE" AS PUBLISHED BY THE INTERNATIONAL CHAMBER OF COMMERCE.

WHEN FORCE MAJEURE HAPPENS THE BUYER OR SELLER MUST IMMEDIATELY SEND WITHIN FIFTEEN (15) DAYS THEREAFTER BY REGISTERED AIRMAIL TO THE OTHER PARTY A CERTIFICATE OF FORCE MAJEURE ISSUED BY A COMPETENT GOVERNMENT AUTHORITY AT THE PLACE WHERE THE FORCE MAJEURE OCCURRED AS EVIDENCE THEREOF.

## ARTICLE 18 - ARBITRATION

THE PARTIES HEREBY AGREE TO SETTLE ALL DISPUTES AMICABLY. IF SETTLEMENT IS NOT REACHED, THE DISPUTE IN QUESTION SHALL BE SUBMITTED TO ARBITRATION. THE PLACE OF ARBITRATION SHALL BE IN

Seller                    11              Buyer



**FastForward div of 1411347 Ontario Limited**

THE CITY OF NEW YORK IN THE UNITED STATES AT THE COURTS OF ARBITRATION UNDER I.C.C. RULES AND REGULATIONS FOR COMMERCIAL ARBITRATION BY SINGEL ARBITRATOR. THE LOSING PARTY WILL PAY THE ARBITRATION FEE. IT IS UNDERSTOOD THAT IN THE EVENT OF DISPUTE OR ARBITRATION, ENGLISH LANGUAGE AND THE LAWS OF THE UNITED STATES SHALL PREVAIL. THE AWARD OF ICC SHALL BE FINAL AND BINDING FOR BOTH PARTIES.

## ARTICLE 19 - EXECUTION OF CONTRACT

EACH OF THE PARTIES TO THIS CONTRACT REPRESENTS THAT IT HAS FULL LEGAL AUTHORITY TO EXECUTE THIS CONTRACT AND THAT EACH PARTY IS TO BE BOUND BY THE TERMS AND CONDITIONS AS SET FORTH HEREIN. EACH PARTY AGREES THAT CONTRACT MAY BE EXECUTED SIMULTANEOUSLY BY AND BETWEEN THE PARTIES VIA FAX OR FACSIMILE / E-MAIL TRANSMISSION, EACH OF WHICH SHALL BE DEEMED AS ORIGINAL NATURE. THIS CONTRACT REPRESENTS THE ENTIRE AGREEMENT BETWEEN THE PARTIES AND ANY CHANGE WILL BE MADE IN WRITING, EXECUTED BY BOTH PARTIES.

BUYER AND SELLER AGREE THAT EITHER PARTY MAY ASSIGN THIS CONTRACT, IN WHOLE OR IN PART(S), TO A THIRD PARTY; HOWEVER, THE ASSIGNOR SHALL REMAIN LIABLE UNDER THIS CONTRACT.

## ARTICLE 20 - NON-DISCLOSURE & NON-CIRCUMVENTION

ALL PARTIES DO HEREIN AGREE THAT NON-CIRCUMVENTION AND NON-DISCLOSURE RULES OF ALL ISSUES FROM INTERNATIONAL CHAMBER OF COMMERCE   APPLY TO THIS TRANSACTION FOR A PERIOD OF FIVE (5) YEARS FROM DATE OF EXECUTION. THIS AGREEMENT BY UNDERSIGNED, HIS OR HER ASSIGNS, AGENTS, HEIRS, THIS NDNC ALSO APPLIES TO ANY AND ALL OTHER TRANSACTIONS DIRECTLY OR INDIRECTLY BETWEEN THE PARTIES.

BUYER AND SELLER RESPECT THE HIGHLY CONFIDENTIAL NATURE OF THIS CONTRACT AND AGREE TO MAINTAIN IN STRICTEST CONFIDENCE THE NAMES OF THE PARTIES WHOSE IDENTITIES MAY BECOME KNOWN ONE ANOTHER THROUGH EITHER THE TENDERING OF DOCUMENTS OR ASSEMBLY OF BANKING OR GOVERNMENT APPROVALS. THE PARTIES AGREE TO MAINTAIN STRICT CONFIDENTIALITY CONCERNING THE IDENTITIES OF THE PARTIES DIRECTLY OR INDIRECTLY INVOLVED IN THIS TRANSACTION. ALL DATA REMAIN THE PROPERTY OF THE PARTY WHO HAS BROUGHT THE RESPECTIVE DATA INTO THIS TRANSACTION. ANY OF THE PARTIES BREACHING THIS RULE WILL BE LIABLE FOR ANY DAMAGES RESULTING FROM SUCH ACTION TO BE COMMITTED DELIBERATELY OR BY NEGLIGENCE. IN CASE OF BREACH OF THE RESPECTIVE RULES EMITTED, THE LAWS OF THE INTERNATIONAL CHAMBER OF COMMERCE, PARIS (ICC/PARIS) WILL BE APPLIED TO.

THE INTERFERING PARTY WILL BE CHARGED WITH THE LOSS OF PROFITS IN THIS OR ANY FUTURE TRANSACTION, BY THE INJURED PARTY, WHO WILL BE ENTITLED TO FILE LEGAL PROCEEDINGS AGAINST THE INTERFERING PARTY AT THE INTERNATIONAL CHAMBER OF COMMERCE IN NEW YORK CITY NEW YORK, USA TO RECOVER THEIR LOSSES.

## ARTICLE 21 - GOVERNING LAW

THE CONTRACT WILL BE GOVERNED, AND INTERPRETED IN ACCORDANCE WITH THE RULES OF THE INTERNATIONAL CHAMBER OF COMMERCE AND ENGLISH LAW, AND SUBJECT TO THE INTERPRETATION OF INCOTERMS 2000 EDITION TO APPLY.

## ARTICLE 22 – CLAIM

Seller                               12                 Buyer



**FastForward div of 1411347 Ontario Limited**

SHOULD THE COMMODITY BE DAMAGED DURING TRANSPORTATION TO THE DESTINATION PORT THE BUYER 'S CLAIM IS TO BE ADDRESSED TO THE INSURANCE COMPANY AND SETTLED BETWEEN THE BUYER AND THE INSURANCE COMPANY.

### ARTICLE 23 - BREACH OF THE CONTRACT

*In the event of a breach of any term of this contract the defaulting party shall be given a reasonable period in which to rectify the said breach.*

*If the defaulting party fails to rectify the breach, the aggrieved party shall be entitled to cancel the contract and claim value of not less than 5% of the total value of the Finance Instrument value for the damages for losses and expenses suffered.*

*Consequential losses shall be specifically excluded from this contract. and /or buyer failed to open the non-operative L/C he will responsible to compensate the seller by 5% of total value of the contract and compensate the brokers /seller intermediaries as per signed MFPA between them and seller .*

### ARTICLE 24 - VALIDITY PERIOD

IT IS HEREBY AGREED AND UNDERSTOOD THAT THIS CONTRACT WILL HOLD ITS VALIDITY IF BANKING INSTRUMENTS ARE PUT INTO PLACE BEFORE MAY 13TH, 2011.

### ARTICLE 25 – NOTIFICATIONS

THE PARTIES HEREBY AGREE THAT ANY AND ALL NOTICE OR OTHER COMMUNICATION PROVIDED FOR, REQUIRED, PERMITTED, OR WITH RESPECT TO THIS CONTRACT SHALL BE IN WRITING, AND SHALL BE DEEMED SUFFICIENTLY GIVEN AND EFFECTIVE ON THE TENTH (10) BUSINESS DAY AFTER DISPATCH BY AIR COURIER SERVICE, CERTIFIED OR REGISTERED MAIL TO THE RESPECTIVE ADDRESSES OF EACH PARTY AS SET FORTH HEREIN, OR, AS EITHER PARTY, FROM TIME TO TIME, SHALL NOTIFY THE OTHER IN WRITING SENT IN THE SAME MANNER AS HEREIN PROVIDED. UNTIL DELIVERY OF FULLY EXECUTED HARD COPY ORIGINALS, FACSIMILE COPY OF NOTICES IS THE OPERATIVE INSTRUMENT SHALL BE DEEMED AN ORIGINAL, AND IS LEGALLY VALID AND BINDING UPON THE PARTIES HERETO AND THEIR RESPECTIVE LEGAL REPRESENTATIVES, SUCCESSORS AND ASSIGNS AND SHALL BE ADMISSIBLE AS EVIDENCE IN ANY PROCEEDING RELATING TO THE SUBJECT OF THIS CONTRACT.

A STAMPED RECEIPT ISSUED BY A COUNTRY'S AUTHORIZED POST OFFICE FOR REGISTERED MAIL SHALL BE PRESUMPTIVE EVIDENCE OF DEPOSIT IN THE MAIL, AND ALSO A RECEIPT SIGNED BY A RESPONSIBLE PERSON FOR THE RECIPIENT PARTY OR COURIER SHALL BE PRESUMPTIVE EVIDENCE OF ACTUAL DELIVERY.

PERSON FOR THE RECIPIENT PARTY OR COURIER SHALL BE PRESUMPTIVE EVIDENCE OF ACTUAL DELIVERY.

**SELLER**
1411347 ONTARIO LIMITED
33 QUEEN ST. S. KITCHENER,
ONTARIO, CANADA, N2G1V8

**BUYER**
SWEETENERS PLUS, INC.
5768 Sweeteners Blvd.
Lakeville, NY 14480
United States of America

Seller ⟋⟍        13        Buyer



**FastForward div of 1411347 Ontario Limited**

DATE:  March 30, 2011
COMPANY SEAL
For and behalf of the seller:                    For and behalf of the Buyer:

Name: ALEXANDER RUGE                          MARK WHITFORD
   SR COMMODITIES                              VP SALES & MARKETING

### ANNEX "A"

### SCHEDULE OF DELIVERIES

| QUANTITY | START TO DELIVER | END OF DELIVERY |
|---|---|---|
| | 35-45 DAYS FROM LC. | WITHIN 16-18 DAYS AFTER VESSEL IS LOADED |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

FURTHER TO THE CONDITIONS SET OUT IN **ARTICLE 06** AND **ARTICLE 12 / 10** THE BUYER'S SHIPPING
SCHEDULE IS AS FOLLOWS:

• VESSEL SHIPPED 35-45 DAYS AFTER ACCEPTANCE OF FINANCE INSTRUMENT BY SELLER'S BANK

### STANDBY LETTER OF CREDIT

Issued by:
Number of the Standby Letter of Credit:
Date of issuance:
Date of maturity: _____ Months from the date of issuance
Date of expiry: 15days after the date of maturity

Seller                           14                    Buyer



**FastForward div of 1411347 Ontario Limited**

BENEFICIARY:
Beneficiary's bank:
Address of the bank:
Account name:
**IBAN:**

We the undersigned,  Bank., in full banking responsibility, hereby confirm the issuance of our Unconditional Irrevocable, Divisible, Transferable, Unencumbered and Assignable STANDBY LETTER OF CREDIT, for the amount of   USD 8,750,000.00
To

This Standby Letter of Credit will be valid 6 Months (180days) from its issuance. Payment will be available, from maturity date, at first written demand (reference : contract no. XXXX) from the Beneficiary, or Holder or Owner of the present standby letter of credit, via tested telex or fax. Any demand will have to refer as follows:

« Drawn under STANDBY LETTER OF CREDIT N°.................. Dated ................. »
This STANDBY LETTER OF CREDIT will be governed by the rules of the International Chamber of Commerce from Paris (France) (UCP500/600).
This cable is an operative instrument, all charges for applicant's expense.

This standby letter of credit expires on 15days after the date of maturity.

Authorized bank Officer [1]                     Authorized bank Officer [2]
Name :                                                       Name :
Title : Manager                                            Title :
Tel :                                                          Tel :
Fax :                                                         Fax :
Seal of the bank                                          Seal of the bank


# END

Seller                                    15                   Buyer

| | |
|---|---|
| **From:** | Mark Whitford |
| **To:** | Vincent M. DeOrchis |
| **Subject:** | Fw: letter |
| **Date:** | Thursday, November 10, 2011 8:38:11 AM |

Vince,

This might be some of the same information Louis shared with you yesterday.

Email transmission from Claire Ambrosio, confirming she was in agreement to the terms of the escrow account, as to funds being disbursed, which is spelled out in this email as well.

----- Original Message -----
**From:** claire ambrosio
**To:** Mark Whitford
**Cc:** hector@archangeltrading.com ; Louis Ferro ; Bowen ; Felix Reznick
**Sent:** Wednesday, September 21, 2011 11:33 AM
**Subject:** Re: letter

We agree and please forward a copy the wire transfer confirmation code asaap.

On Wed, Sep 21, 2011 at 9:20 AM, Mark Whitford
<mark.whitford@sweetenersplus.com> wrote:
Louis,

The letter from Archangel Trading is consistent with our conversation from this morning, and satisfies our concerns. We will be contacting Five Star Bank immediately to initiate the Swift MT 103 method.

Since the parties of Fastforward were not part of this morning's  conference call, please provide assurances they are okay with moving forward on this transactionas outlined.

Lastly, the following statement is in respect to the wire transer,

"Pursuant to that certain letter amendment from Archangel Trading received September 21, 2011, which letter amendment modifies the terms of that Contract of Purchase and Sale, dated May 4, 2011, between Sweeteners Plus, Inc. and 1411347 Ontario Limited c.o.b. FastForward, Sweeteners Plus will be wire transferring US$7,862,500 to you to hold in escrow until such time as you have received and confirmed receipt to Sweeteners Plus of all Shipping Documents required by Article 10 of the Contract of Purchase and Sale.  This escrow arrangement is in lieu of the Letter of Credit requirements set forth in the Contract of Purchase and Sale."

If everyone is in agreement, we will initiate the transfer.

Thank you.

Mark Whitford

> ----- Original Message -----
> **From:** hector@archangeltrading.com
> **To:** claire ambrosio ; Louis Ferro ; Mark Whitford
> **Cc:** Bowen
> **Sent:** Wednesday, September 21, 2011 11:23 AM
> **Subject:** letter
>
> to all
> Attached please find letter of understanding. Please confirm reciept.  Also if you can

please send me wire confirmation so i can start the process.

Thank you

Hector M Ortiz
General Manager
Archangel Trading inc
507-6717-0903
hector@archangeltrading.com
skype h.ortiz
www.archangeltrading.com

--

Claire C. Ambrosio
Attorney at Law
952 N. Western Avenue
Los Angeles, California 90029
323-469-0745
323-469-0723 (Fax)
310-993-9951 cell
email: cambrolaw@gmail.com

| | |
|---|---|
| **From:** | Louis A. Ferro |
| **To:** | Vincent M. DeOrchis |
| **Subject:** | FW: Authorization to transfer LC |
| **Date:** | Thursday, November 10, 2011 10:00:27 AM |

**From:** Fastforwardglobal Inc. [mailto:fastforwardglobal@gmail.com]
**Sent:** Monday, September 12, 2011 6:07 PM
**To:** Louis A. Ferro
**Subject:** Fwd: Authorization to transfer LC

---------- Forwarded message ----------
From: **Fastforwardglobal Inc.** <fastforwardglobal@gmail.com>
Date: Wed, Aug 31, 2011 at 3:45 PM
Subject: Authorization to transfer LC
To: "Louis A. Ferro" <louis@chobeconsulting.com>
Cc: eurasia@rogers.blackberry.net, Patrick Rodgers <startradingusa@hotmail.com>

Please be advised that Claire Ambrosio is authorised to receive the sweeteners plus email on behalf of Fastforward to fulfill the contract with Archangel.

Yours truly,
alexander RugeC

On Aug 31, 2011 12:26 PM, "Louis A. Ferro" <louis@chobeconsulting.com> wrote:
> Alex:
>
> I just spoke to Mark. He said M&T has tried three times to send the LC to
> CIBC today, per the agreement, and it has been rejected each time. The bank
> indicated it has to go through the beneficiary per agreement or change the
> agreement, which will take time. We need to use an account in the
> beneficiaries name.
>
> We need to resolve this asap.
>
> Best,
> Louis
>
>
> Louis A. Ferro
> Chobe Advisers LLC
> 240 East 47th Street
> New York, NY 10017
> (917) 270-0709
> (703) 891-9424 Fax
>
> Disclaimer: Sender is not a United States Securities Dealer or Broker or
> U.S. Investment Advisor. Sender is a Consultant and makes no warranties or

> representations as to any Buyer, Seller or Transaction. This e-mail letter
> and the attached related documents are never to be considered a solicitation
> for any purpose in any form or content. Upon receipt of these documents you,
> as the Recipients, hereby acknowledges this warning and disclaimer. If
> acknowledgment is not accepted, Recipients must return the document copies,
> in their original receipted condition. These Confidential communications are
> protected under Gramm-Leach-Bailey Act 15 USC, Subchapter 1, sections
> 6801-6809 and other laws addressing the disclosure of Non-Public Personal
> Information.
>
>
>