# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**SWEETENERS PLUS, INC.,**

**Plaintiff,**

**-vs-** **Case No. 6:11-cv-1799-Orl-DAB**

**GLOBAL SUPPLY SOURCE, INC., HECTOR ORTIZ, CHARLES JOSLIN, KERRI G. JOSLIN, MIRIAM ORTIZ and PACIFIC RIM TRADERS,**

**Defendants.**

---

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **AMENDED MOTION FOR DEFAULT JUDGMENT AGAINST HECTOR ORTIZ AND MARIAM ORTIZ (Doc. 80)** |
| **FILED:** | **March 12, 2013** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part** as set forth below.

Plaintiff Sweeteners Plus, Inc. filed suit against Defendants Global Supply Source, Inc., Hector Ortiz, Miriam Ortiz, Charles Joslin, Kerri Joslin, and Pacific Rim Traders, alleging Defendants are connected to the embezzlement of $7,862,500 from Sweeteners in a scam involving the sale of Brazilian sugar which was never shipped. Doc. 1. Sweeteners alleges that Mr. Ortiz, on behalf of Defendant Archangel World Investments, Inc., fraudulently induced the escrow agent holding

Sweetener's funds to release $7,216,694 to himself and others contrary to the escrow agreement under which the agent was holding the funds. Doc. 42.

Plaintiff now moves for final default judgment against Hector Ortiz and Miriam Ortiz for damages from the fraud and for foreclosure of an equitable lien against their home, allegedly purchased with proceeds from the fraud[1]. Doc. 80. On March 4, 2013, Mr. Ortiz was arrested in this District on a criminal complaint from the Western District of New York arising out of the same operative facts. *See United States v. Ortiz,* Case No. 6:13-mj-1106-GJK-1.

## I. *Procedural History*

Plaintiff originally filed suit on November 14, 2011, and filed the operative Third Amended Complaint on March 8, 2012, alleging claims for breach of contract (Count IV); fraud (Count III); conversion (Count V); unjust enrichment (Count VI, Count VII); and for an accounting (Count VIII) against Defendants Global Supply Source, Inc., Hector Ortiz, Miriam Ortiz, Charles Joslin, Kerri G. Joslin, and Pacific Rim Traders. Doc. 68. Sweeteners specifically asserts claims for fraud against Hector Ortiz; and for unjust enrichment against Hector Ortiz and his wife, Miriam Ortiz, alleging a portion of the monies paid for the undelivered sugar was transferred to a Vantage Credit Union account held in their names, and that Plaintiff is entitled to an equitable lien against both Ortizes[2] and the home they bought with funds from the fraud.

Plaintiff previously moved for default judgment against Hector Ortiz and Miriam Ortiz, who had failed to file a responsive pleading. Doc. 63. On June 8, 2012, the Clerk of Court entered defaults against Hector Ortiz and Miriam Ortiz for failure to appear or otherwise defend. Doc. 57,

[1]Plaintiff previously obtained an order granting an extension of the notice of *lis pendens* against the property of Charles and Kerri Joslin, who have not defaulted in the case, until further order of the Court following litigation of the claims against them. *See* Docs. 65, 67, 75.

[2]Plaintiff also dropped or recast a claim for "maritime fraud" to one of "fraud"; Plaintiff has since voluntarily dropped maritime claims. *See* Doc. 68.

58. However, although Hector Ortiz was served with the initial complaint (Doc. 15), the amended complaints were served on him via certified mail, and this did not constitute adequate service. *See* Doc. 74. Plaintiff served the Third Amended Complaint on Hector Ortiz on February 6, 2013 and the Clerk entered default on March 11, 2013. Docs. 76, 78. Service on Hector and Miriam Ortiz was accomplished (at separate times) by substituted service on the respective spouses. Docs. 52, 78; *see* Fed. R. Civ. P. 4(e)(2)(B) (authorizing service of process on an individual by, "leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there"). On March 12, 2013, Plaintiff filed its Amended Motion for Default Judgment Against Hector Ortiz and Mariam Ortiz. Doc. 80. No response has been filed by any party[3].

## II. *Legal Standard for Motion for Final Default Judgment*

Before the court may enter a final default judgment, the clerk must enter a default when the "party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." FED. R. CIV. P. 55(a); *see also Solaroll Shade & Shutter Corp. v. Bio-Energy Sys*., 803 F.2d 1130, 1134 (11th Cir. 1986) ("Rule 55 applies to parties against whom affirmative relief is sought who fail to 'plead or otherwise defend'" (citation omitted)). Notwithstanding the entry of default by the clerk, "a defendant's default does not in itself warrant the court in entering a default judgment." *Nishimatsu Constr. Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)[4].

[3]Sweeteners mailed a copy of the motion to the Ortizes at the Wellington address and to Hector Ortiz at an Altamonte Springs address. *See* Doc. 80 at 10.

[4]All decisions of the United States Fifth Circuit Court of Appeals before October 1, 1980 which have not been overruled by the United States Eleventh Circuit Court of Appeals are binding on federal courts situated in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

Therefore, the court must evaluate whether it is proper to enter a default judgment. For example, if a defendant never appears or answers a complaint, then the "case never has been placed at issue[,]" and thus, the court may enter a default judgment. *Solaroll Shade & Shutter Corp.*, 803 F.2d at 1134. However, prior to entering a default judgment, the court must verify that the complaint is well pleaded because "[a] 'defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, and is barred from contesting on appeal the facts thus established.'" *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (citations omitted); *Nishimatsu Constr. Ltd.*, 515 F.2d at 1206 ("There must be a sufficient basis in the pleadings for the judgment entered.").

To determine if a plaintiff's complaint is well-pleaded, the court considers Rule 8(a)(2) of the Federal Rules of Civil Procedure and the standard set forth in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) (explicating *Bell Atl. Corp v. Twombly*, 127 S.Ct. 1955 (2007)). According to Federal Rule of Civil Procedure 8(a)(2), to state a claim for relief, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Thus, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 127 S.Ct. at 1947). In other words, the allegations in the complaint need to be sufficient "to 'raise a right to relief above the speculative level' on the assumption that all the allegations in the complaint are true." *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (citing *Twombly*, 127 S.Ct. at 1965). Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 129 S.Ct. at 1949 (citation omitted).

### ***III. Background Facts***

Plaintiff Sweeteners Plus, Inc., is a New York corporation in the business of purchasing sugar for resale in bulk quantities. Doc. 42 ¶ 4. Hector Ortiz was the Vice-President and General Manager

of Archangel Trading and Archangel World Investment, Inc. (collectively "Archangel"), Panama corporations; Miriam Ortiz is the wife of Hector Ortiz[5]. Doc. 42 ¶ 7. On May 4, 2011, Sweeteners entered into an agreement with Fastforward, a division of 1411347, Ontario Limited, a Canadian company, for the purchase of 12,500 metric tons (MT) of sugar; Fastforward subsequently assigned its rights and obligations under the agreement to Archangel and Archangel accepted those obligations, subject to letter modifications. Doc. 42 ¶ 13. Archangel further acknowledged its contract obligation in an International Chamber of Commerce Non-Circumvention, Non-Disclosure & Working Agreement ("ICC 400/500/600. On September 21, 2011, Archangel issued a Pro Forma Invoice reciting the terms of the agreement for the sugar purchase. Doc. 42 ¶ 13, Ex. A, Purchase Agreement[6]. Doc. 42 ¶ 13.

As part of the Purchase Agreement, Sweeteners was required to deposit in escrow $7,862,500 (the "Purchase Price") pursuant to a Paymaster Agreement, as approved by Sweeteners in an email. Doc. 42 ¶ 14, Ex. B[7]. Sweeteners is a real party in interest and thus a third party beneficiary of the Paymaster Agreement. Doc. 42 ¶ 15. On September 21, 2011, Sweeteners deposited the Purchase Price in escrow into the Trust Account of Attorney Claire Ambrosio, the "Paymaster" named in the Paymaster Agreement. Doc. 42 ¶ 146. On the delivery to the "Paymaster" and to Sweeteners of the original shipping documents listed in Paragraph 10 of Exhibit B to the Paymaster Agreement (the

---

[5]The other Defendants, Global Supply Source, Inc., and Charles Joslin (and his wife, Kerri), were residents of Florida. Doc. 42 ¶ 9-11. Pacific Rim is a New Zealand entity for whom Joslin and/or Global act as agent in the United States. Doc. 42 ¶ 12.

[6]The Purchase Agreement consists of (1) the May 4, 2011 Agreement between Fastforward and Sweeteners; (2) the August 31, 2011 Fastforward assignment email; (3) the undated Archangel letter of acceptance and price modification; (4) the September 22, 2011 ICC 400/500/600; and (5) the September 21, 2011 Pro Forma Invoice marked "Paid."

[7]The Paymaster Agreement consists of (1) the September 14, 2011 Paymaster Agreement; (2) the September 21, 2011 e-mail confirmation of Paymaster Agreement terms by Sweeteners; (3) the August 31, 2011 Fastforward assignment email.

"Shipping Documents") the Paymaster was authorized to release the deposited funds to Ortiz, on behalf of Archangel. Doc. 42 ¶ 17.

However, on September 21, 2011, Hector Ortiz, on behalf of himself and/or Archangel, and Joslin, on behalf of himself and/or Global, falsely represented that they had obtained the Shipping Documents. Doc. 42 ¶ 18. Without presenting or surrendering the Shipping Documents and contrary to the Paymaster Agreement, Ortiz and/or Joslin persuaded the Paymaster, to break the escrow and release $7,216,694 of the Purchase Price, to the following two accounts within Defendants' control: $6,187,500 to the account of Global Supply Source, Inc. at TD Bank[8] in Altamonte Springs, Florida; and $852,500 to the account of Hector Ortiz and Miriam Ortiz at Vantage Credit Union[9]. Doc. 42 ¶ 19.

In actuality, neither Ortiz, Archangel, Joslin nor Global had obtained the "Shipping Documents" and therefore never possessed them. Doc. 42 ¶ 20. After payment of the Purchase Price to the Paymaster, Sweeteners discovered that Archangel was not the direct supplier of the sugar; but instead, Archangel purportedly had an agreement with a joint venture involving Global under which the sugar would be supplied. Doc. 42 ¶ 21. Subsequent to the disbursement of the above funds, Archangel, Global, Joslin and Ortiz, represented that the sugar had been loaded in Brazil aboard various vessels in the Hans Carrier Line. Doc. 42 ¶ 22 & Ex. C. However, Archangel never surrendered to Sweeteners any of the Shipping Documents for any of the vessels on which it claimed the sugar had been loaded in Brazil. Doc. 42 ¶ 22. After repeated demands, Archangel, Ortiz, Joslin and Global failed to return the funds disbursed in violation of the Paymaster Agreement; to provide the Shipping Documents; or to deliver the sugar to Sweeteners. Doc. 42 ¶ 23.

---

[8]TD Bank, NA, 514 E Altamonte Dr., Altamonte Springs, FL 32701, Account ending in 3628.

[9]Vantage Credit Union, 4020 Fee Road, Bridgeton, MO 63044; Account ending in 0669.

The funds used to purchase the home are traceable to Sweeteners. Doc. 42 ¶ 79. On September 21, 2011, Sweeteners wired $7,862,500.00 to the escrow agent, Claire Ambrosio. Doc. 42; Bennett Aff. attached as Doc. 80-5 ¶ 4. On September 22, 2011 Ambrosio wired $62,500 and on October 14, 2011, Ambrosio wired $790,000 to Ortiz's account at Vantage Credit Union. Doc. 80-5 ¶ 4(a). Prior to the $62,500.00 wire, the Ortiz account balance was $10.10. Doc. 80-5 ¶ 4(c). Prior to the $790,000 wire, the Ortiz account balance was $39,485.42. Doc. 80-5 ¶ 4(d). Amounts totaling $533,630.00 were paid from the Ortiz Vantage Credit Union Account to Minto Builders and Founders. Doc. 80-5 ¶ 4(e).

Specifically, on October 16, 2011 the Ortizes transferred $104,974 of Plaintiff's funds to Minto Communities and on November 14, 2012 they transferred $428,656 of Plaintiff's funds to Founders Title for the purchase of real property located at 9481 McAneeny Court, Wellington, Palm Beach County, Florida, for a total of $533,630 of funds transferred from Plaintiff's funds. Doc. 42 ¶ 79. The property is titled in the names of Hector Ortiz and Miriam Ortiz, husband and wife. See Special Warranty Deed, Doc. 80-1. The 9481 McAneeny Court house was conveyed by Minto Builders to the Ortizes on November 18, 2011, on a deed prepared by Founders Title, for consideration in the sum of $533,6300. Doc. 80-5 ¶ 5. The 9481 McAneeny Court address is claimed as the homestead by the Ortizes for 2013 according to the Palm Beach County Property Appraiser's records. Doc. 80-2. Despite Sweeteners' demand, Hector and Miriam Ortiz have refused to return any portion of the $852,500 to the Paymaster account. Doc. 42 ¶ 78. The funds to purchase the Ortiz homestead were obtained by Mr. Ortiz's fraud. Doc. 42 ¶¶ 18, 19, 20, 22, 23.

As to damages, Sweeteners paid $7,216,694 for sugar that was never delivered. Doc. 80-6 ¶ 4. Sweeteners has suffered an additional $5,909,875, in damages. Doc. 80-6 ¶ 4. Sweeteners now seeks a default judgment against Hector Ortiz, jointly and severally, for damages in the amount of $13,126,669, together with prejudgment interest, costs and attorneys fees; and a constructive trust

against Hector Ortiz and Miriam Ortiz, husband and wife, on the 9481 McAneeny Court Property, as well as an order transferring title to the Property.

## ***III. Analysis***

A. *Fraud*

To prove fraud against Mr. Ortiz, Sweeteners must demonstrate: (1) a false statement concerning a specific material fact; (2) the maker's knowledge that the representation is false; (3) an intention that the representation induces another's reliance; and (4) consequent injury by the other party acting in reliance on the representation. *Wadlington v. Continental Med. Servs., Inc.*, 907 So.2d 631, 632 (Fla. 4th DCA 2005) (citing *Cohen v. Kravit Estate Buyers, Inc.*, 843 So.2d 989, 991 (Fla. 4th DCA 2003)).

In this case, the Paymaster Agreement required that the funds deposited by Sweeteners were to be held until the Shipping Documents were delivered to the Paymaster and Sweeteners; only at that time could the funds be released to Archangel. Doc. 42 ¶ 40. Despite the terms of the Paymaster Agreement, Ortiz, on behalf of Defendant Archangel World Investments, Inc., knowingly misrepresented to the Paymaster/ escrow agent who was holding Sweetener's funds, Claire Ambrosio, that he had obtained the Shipping Documents required to be presented before disbursing the escrowed Purchase Price, that surrender of the documents was not necessary, and that she could release the $7,216,694 held on behalf of Sweeteners to him and others. Doc. 42 ¶ 41. Ortiz knew that the representation was false and he misrepresented to the Paymaster that title to the goods for which the funds in the escrow account had been deposited were now transferred to Sweeteners and that the goods aboard seagoing vessels belonged to Sweeteners. Doc. 42 ¶ 42. In reliance on Ortiz's misrepresentations, the Paymaster, on behalf of Sweeteners, released the escrowed funds. Doc. 42 ¶ 43. Hector Ortiz further fraudulently misrepresented that the funds that were removed from the

escrow account would be returned to the account. Doc. 42 ¶ 44 & Ex. E. Sweeteners is entitled to default judgment on its fraud claim (Count III) against Hector Ortiz.

B. *Constructive trust*

Sweeteners contends that it is entitled to the imposition of constructive trust upon the homestead property of Hector and Miriam Ortiz at 9841 McAneeny Court, Wellington, Florida, and to have legal title transferred to Sweeteners because the home was purchased with the funds fraudulently obtained from Sweeteners by Hector Ortiz. Doc. 80 (citing *See In re Financial Federated Title and Trust, Inc.*, 347 F.3d 880, 888 (11th Cir. 2003). It is well-settled under Florida law that the homestead "cannot be employed as a shield and defense after fraudulently imposing on others." *Jones v. Carpenter*, 90 Fla. 407, 106 So. 127, 130 (Fla. 1925); *Craven v. Hartley*, 102 Fla. 282, 135 So. 899 (Fla. 1931); *LaMar v. Lechlider*, 135 Fla. 703, 185 So. 833 (Fla. 1939); *Palm Beach Savings & Loan Association, F.S.A. v. Fishbein*, 619 So.2d 267, 270 (Fla. 1993) ("Where equity demands it this Court has not hesitated to permit equitable liens to be imposed on homesteads beyond the literal language of [the Florida Constitution,] Article X, Section 4."); *cf. Havoco of America, Ltd. v. Hill*, 790 So.2d 1018 (Fla. 2001) (holding the equitable lien as imposed in *Jones* is still a viable remedy for creditors in cases where funds obtained fraudulently were used directly to purchase a homestead).

The doctrine of constructive trusts is a recognized tool of equity designed in certain situations to right a wrong committed and to prevent unjust enrichment of one person at the expense of another either as a result of fraud, undue influence, abuse of confidence or mistake in the transaction. *In re Financial Federated*, 347 F.3d at 891 (citing *In re Powe*, 75 B.R. 387, 393 (Bankr. M.D. Fla. 1987)). "A constructive trust is one raised by equity in respect to property which has been acquired by fraud." *Provence v. Palm Beach Taverns, Inc.*, 676 So.2d 1022, 1025 (Fla. 4th DCA 1996)(citing *Quinn v. Phipps*, 93 Fla. 805, 113 So. 419, 422 (1927)). The purpose of the constructive trust is to prevent unjust enrichment of culpable parties. *Bender v. CenTrust Mort. Corp.*, 51 F.3d 1027, 1029 (11th Cir.

1995) (citing *American Nat'l Bank of Jacksonville v. FDIC*, 710 F.2d 1528, 1541 (11th Cir. 1983)).

The remedy applies where money is obtained by fraud, and there is no adequate remedy at law. *Bender,* 51 F.3d at 1029. Constructive trusts are akin to an express trust in that a bifurcation of title occurs; bare legal title to the property is held by the possessor of the property while the beneficial interest is held by the person entitled to the property. *Provence*, 676 So.2d at 1025 (citing *In re Shepard*, 29 B.R. 928 (Bkrtcy. M.D. Fla.1983)). Unlike an express trust or a resulting trust, a constructive trust arises solely by operation of law. *Provence*, 676 So.2d at 1025 (citing *Palmland Villas I Condominium Ass'n, Inc. v. Taylor,* 390 So.2d 123 (Fla. 4th DCA 1980)). Thus, a constructive trust is a remedial device with dual objectives: to restore property to the rightful owner and to prevent unjust enrichment. *Provence*, 676 So.2d at 1025 (citing *Abreu v. Amaro,* 534 So.2d 771 (Fla. 3d DCA 1988)).

A plaintiff must allege the basic elements necessary for a constructive trust: fraud by the defendant in obtaining plaintiff's property, and specific identifiable property as the res which can be clearly traced in assets of the defendant, claimed by the plaintiff. *Bender*, 51 F.3d at 1030 (citing *Finkelstein v. Southeast Bank, N.A.*, 490 So.2d 976, 983-984 (Fla. 4th DCA 1986). If the original res no longer remains, but is transformed into a different form, it is the burden of the party seeking to impress a constructive trust to trace the property to specific funds before it can prevail. *In re Financial Federated*, 347 F.3d at 891 (citing *In re Powe*, 75 B.R. at 393). Traceable proceeds from prior fraudulent transfers, which are used to acquire a homestead, may also be subject to a constructive trust. *In re Financial Federated,* 347 F.3d at 891 *(In re Lapes*, 254 B.R. 501 (S.D. Fla. 2000)).

In this case, Sweeteners conferred a benefit on Hector and Miriam Ortiz, specifically the $852,500 from the Paymaster account which was transferred to Vantage Credit Union Account ending in Account No. 0669 and held in the name of Hector and Miriam Ortiz. Doc. 42 ¶ 77. Hector Ortiz

used $533,630.00 of those funds to purchase real property located at 9481 McAneeny Court, Wellington, Palm Beach County, Florida[10].

Although homestead real estate is generally protected from creditors by Florida's Constitution Article X, Section 4, courts have recognized an exception to the homestead protection when the property was acquired with funds generated by fraudulent activity, and a constructive trust is necessary to prevent unjust enrichment. *See, e.g., In re Financial Federated Title & Trust, Inc.*, 347 F.3d 880, 881 (11th Cir. 2003) (holding that the Florida Constitution does not protect a homestead purchased with fraudulently obtained funds from an equitable lien or constructive trust ); *LaBelle v. LaBelle*, 624 So.2d 741, 742 (Fla. 5th DCA 1993) (stating, "[T]he protection[s] afforded by Article X, Section 4 of the Florida Constitution . . . do not apply to properties which are purchased with fraudulently obtained, traceable proceeds and which are, therefore, subject to the imposition of a constructive trust."); *Zureikat v. Shaibani,* 944 So.2d 1019, 1024 (Fla. 5th DCA 2006) (affirming an equitable lien placed on a homestead where proceeds obtained from fraudulent or reprehensible conduct were used to invest in, purchase, or improve the homestead).

The exception to homestead protection applies even "where funds obtained through one spouse's fraud are used to invest in, purchase, or improve the homestead . . . despite the other spouse's innocence or ignorance of wrongdoing." *Zureikat*, 944 So.2d at 1024 (citing *Palm Beach Savings & Loan Ass'n v. Fishbein*, 619 So.2d 267 (Fla.1993)). The Eleventh Circuit has upheld the application of the constructive trust remedy to transfer real property purchased with funds obtained by fraud, from the wrongdoer to the defrauded plaintiff. *See C&M Investment Group., Ltd. v. Campbell*, No. 11-12327, 448 Fed. Appx. 902 (11th Cir. Oct. 14, 2011) (unpublished[11]).

---

[10]Lot 1719, Block P of OLYMPIA – PLAT II, according to the Plat thereof, as recorded in Plat Book 98, page 1, of the Public Records of Palm Beach County, Florida.

[11]Unpublished opinions of the Eleventh Circuit, constitute persuasive, and not binding, authority. *See* 11th Cir. R. 36-2 and I.O.P. 6.

In support of these damages, Sweeteners has submitted the uncontroverted affidavit of Mark Whitford, Vice President of Sales and Marketing for Sweeteners Plus, Inc. Doc. 80-6. Mr. Whitford attests that Sweeteners paid $7,216,694 on September 21, 2011 for sugar that was never delivered to Sweeteners; on November 14, 2011, Ambrosio returned $645,806 in undisbursed funds to Sweeteners. Doc. 80-6 ¶¶ 4, 5. In addition, Sweeteners has suffered an additional $5,909,875, in damages. Doc. 80-6 ¶ 5. Sweeteners contracted with a supplier in the United States to cover the volume of sugar not provided by Archangel World Investment, Inc., and the purchase price of the sugar was $1,146.39 per metric ton, but the agreement with Archangel World Investment was for $700 per metric ton, thus, the cost difference was $5,579,875. Doc. 80-6 ¶ 5c. Sweeteners also erected a new building, and purchased unloading equipment to handle the bulk sugar ordered from Archangel World Investment; the total cost for the building and equipment was $330,000. Doc. 80-6 ¶ 5d.

The funds to purchase the Ortiz homestead were obtained by Hector Ortiz through fraud committed against Sweeteners, and the funds are directly traceable to the fraud of Hector Ortiz. As such, Sweeteners is entitled to a constructive trust on the 9841 McAneeny property without regard to the homestead designation of Hector Ortiz. *See In re Financial Federated,* 347 F.3d at 892 (where plaintiff could trace over 90% of the funds used to purchase the defendant's homesteaded property to his fraud, plaintiff was entitled to the imposition of a constructive trust on the homestead property). Moreover, although there is no evidence that Miriam Ortiz, Mr. Ortiz's spouse participated in the fraud, she unjustly benefitted by receiving title to the property purchased with Sweeteners' funds because she did not provide any services or goods for the property. Consequently, there is no homestead protection inuring to interest of Miriam Ortiz in the property. *See Zureikat,* 944 So. 2d at 1024; *In re Financial Federated,* 347 F.3d at 890-91 (spouse's lack of knowledge or involvement in the fraudulent activity does not exonerate her from liability; "it is the fraudulent nature of the funds which is of utmost importance.").

The allegations and the proof establish that Hector Ortiz owes Sweeteners the amount asserted, and entry of a judgment is appropriate. *See* FED. R. CIV. P. 55(b)(2) (where the amount of damages is an ascertainable sum certain, a separate hearing is not necessary on the issue of damages); *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F. 3rd 105, 111 (2d Cir. 1997) ("it [is] not necessary for the district court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the default judgment").

*C. Separate Judgment is not appropriate at this juncture*

Sweeteners proposes to have the default judgment entered separately and immediately against Hector Ortiz for fraud and against Hector and Miriam Ortiz for constructive trust. Federal Rule of Civil Procedure 54(b) governs the entry of separate judgments upon multiple claims, and provides as follows:

> When more than one claim for relief is presented in an action, . . . . or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties *only upon an express determination that there is no just reason for delay* and upon an express direction for the entry of judgment.

FED. R. CIV. P. 54(b) (emphasis added). Otherwise, an adjudication of fewer than all the claims or the rights and liabilities of all the parties is not an appealable final decision. *In re Southeast Banking Corp.*, 69 F.3d 1539, 1547 (11th Cir. 1995) (purpose of Rule 54(b) is to prohibit piecemeal appeals). Rule 54(b) provides an exception to the general principle that a final judgment is only proper after the rights and liabilities of all the parties to the action have been adjudicated. *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 165 (11th Cir.1997) (citing *Hogan v. Consolidated Rail Corp.*, 961 F.2d 1021, 1024–25 (11th Cir.1992)); *United States Fidelity & Guar. Co. v. Liberty Surplus Ins.*, No. 6:06-cv-1180-Orl-31UAM, 2007 WL 3275315 (M.D. Fla. Oct. 31, 2007) ("Rule 54(b) certifications 'must be reserved for the unusual case in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by pressing needs

of the litigants for an early and separate judgment as to some claims or parties.' ") (citing *Ebrahimi*, 114 F.3d at 165).

A district court considering a motion for entry of final judgment in *Canadyne-Georgia Corp. v. Bank of America*, No. 5:96-CV 114-1DF, 2001 WL 1571002, *1-2 (M.D. Ga. Dec. 5, 2001), discussed the criteria for entering separate judgments:

> The Supreme Court has outlined a two-prong analysis for determining whether a judgment should be certified under Rule 54(b). First, the district court must determine whether the judgment is final. Second, the district court must determine whether there is any just reason to delay entry of an individual final judgment. Although a decision to certify a judgment under Rule 54(b) is committed to the sound discretion of the district court, the Eleventh Circuit has indicated that this discretion should be exercised conservatively: "Rule 54(b) certifications 'must be reserved for the unusual case in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims or parties.'" As to the first prong, the Supreme Court has explained that the judgment at issue "must be a 'judgment' in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.' . . . As to the second prong, the Eleventh Circuit has directed district courts to balance the judicial administrative interests and relevant equitable concerns. . . . According to the Eleventh Circuit, consideration of the relevant equitable concerns "serves to limit Rule 54(b) certification to instances in which immediate appeal would alleviate some danger of hardship or injustice associated with delay."

*Id*. (citations omitted). Sweeteners has not set forth any argument in support of entry of a separate judgment. At first glance, it does not appear that a separate judgment is appropriate in this case until the claims against Co-Defendants Global Supply Source, Inc., Charles Joslin, Kerri Joslin, and Pacific Rim Traders are also finalized. However, there may be circumstances that Sweeteners may be able to assert that there is "no just reason to delay" entry of the individual separate judgment against the Ortizes. *See, e.g., Davis v. Oldham*, Case No. 6:07-cv-941-Orl-31DAB, 2008 WL 1771809 (M.D. Fla. Jan. 30, 2008) (recommending separate judgment where control of public company had reverted to seller and principal of buyer-corporation had filed for bankruptcy, thus, additional claims against him would be stayed until bankruptcy's conclusion); *Pereira v. Cogan*, 275 B.R. 472, 474 (S.D. N.Y.

2002) (entering a final partial judgment where debtor was insolvent and the trustee had established his right to collect as well as an interest in a prompt enforceable judgment), *aff'd*, 52 Fed. Appx. 536, 539, 2002 WL 31664489, *3 (2d Cir. 2002).

*D. Fact Information Sheet*

Sweeteners also seeks to have the Court order Hector and Miriam Ortiz to complete a Fact Information Sheet in aid of execution pursuant to Florida Rule of Civil Procedure 1.560(c). Generally, a federal court is not bound by state court rules, however proceedings supplementary to and in aid of judgment or execution must accord with the procedure of the state where the court is located; however, federal statues govern to the extent any apply. Fed. R. Civ. P. 69(a). Sweeteners has not cited any legal authority requiring the Fact Information Sheet in this Court.

## CONCLUSION

It is respectfully **RECOMMENDED** that Sweeteners' Motion for Default Judgment be **GRANTED** in part, with entry of the default judgment **deferred** until the final resolution of the claims against the Co-Defendants. It is respectfully **RECOMMENDED** that when it is appropriate to enter default judgment, such judgment be entered in Sweeteners's favor against Hector Ortiz, jointly and severally, for damages in the amount of $13,126,669.00, together with prejudgment interest, costs and attorneys fees; and a constructive trust against Hector Ortiz and Miriam Ortiz, husband and wife, be entered on the 9481 McAneeny Court Property, Wellington, Florida, as well as an order transferring title to the Property. Sweeteners should be given the opportunity **to file a proposed order** on the final default judgment.

Respectfully recommended this 23rd day of July, 2013.

David A. Baker

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record