# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**SWEETENERS PLUS, INC.,**

                **Plaintiff,**

-vs-                             **Case No.  6:11-cv-1799-Orl-DAB**

**GLOBAL SUPPLY SOURCE, INC.,
HECTOR ORTIZ, CHARLES JOSLIN,
KERRI G. JOSLIN, MIRIAM ORTIZ and
PACIFIC RIM TRADERS,**

                **Defendants.**

_____

# REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

      This cause came on for consideration without oral argument on the following motion filed

herein:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S SECOND MOTION FOR DEFAULT FINAL JUDGMENT [AGAINST CHARLES L. JOSLIN , KERRI G. JOSLIN, GLOBAL SUPPLY SOURCE, INC., AND PACIFIC RIM TRADERS] (Doc. 109)** |
| **FILED:** | **October 26, 2013** |
| | **THEREON** it is **RECOMMENDED** that the motion be **GRANTED** as set forth below. |

      Plaintiff Sweeteners Plus, Inc. filed suit against Defendants Global Supply Source, Inc., Hector

Ortiz, Miriam Ortiz, Charles Joslin, Kerri Joslin, and Pacific Rim Traders, alleging Defendants were

connected to the embezzlement of $7,862,500 from Sweeteners in a scam involving the sale of

Brazilian sugar which was never shipped.  Doc. 1.  Sweeteners alleges that Mr. Ortiz and Mr. Joslin,

on behalf of their corporate entities[1], fraudulently induced the escrow agent holding Sweetener's funds to release $7,216,694 to themselves and others contrary to the escrow agreement under which the agent was holding the funds. Doc. 42. District Judge Antoon has already granted a default judgment against Hector and Miriam Ortiz, but deferred entry of the judgment until resolution of the claims against the Co-Defendants. *See* Doc. 96. Plaintiff now seeks to obtain a default judgment against the final four Co-Defendants – Charles L. Joslin, Kerri G. Joslin, Global Supply Source, Inc., and Pacific Rim Traders – and have final judgment entered in its favor against all of the Defendants.

## I. *Procedural History*

Plaintiff originally filed suit on November 14, 2011, and filed the operative Third Amended Complaint on March 8, 2012, alleging claims for breach of contract (Count IV); fraud (Count III); conversion (Count V); unjust enrichment (Count VI, Count VII); and for an accounting (Count VIII) against Defendants Global Supply Source, Inc., Hector Ortiz, Miriam Ortiz, Charles Joslin, Kerri G. Joslin, and Pacific Rim Traders. Doc. 68. Sweeteners specifically asserted claims for fraud against Hector Ortiz and Charles Joslin; and for unjust enrichment against Hector Ortiz and Charles Joslin and their respective spouses, alleging a portion of the monies paid for the undelivered sugar was transferred to accounts held in their names, and later used to purchase homes they bought with funds from the fraud.[2]

A. *Service on the Ortizes*

Plaintiff previously moved for default judgment against Hector Ortiz and Miriam Ortiz, who had failed to file a responsive pleading. Docs. 63, 80. On August 19, 2013, District Judge Antoon granted Plaintiff's Motion for Default Judgment against Hector Ortiz and Miriam Ortiz, for damages

---

[1] On January 4, 2013, Plaintiff filed its Notice of Voluntary Dismissal of Defendants, Archangel World Investment, Inc. and the TD Bank Account in which the funds at issue were deposited. Doc. 68.

[2] Plaintiff also dropped or recast a claim for "maritime fraud" to one of "fraud"; Plaintiff has since voluntarily dropped maritime claims. *See* Doc. 68.

from the fraud and for foreclosure of an equitable lien against their home, purchased with proceeds

from the fraud[3]; entry of judgment was deferred until final resolution of the claims against the Co-

Defendants[4].  *See* Docs. 89, 96 (setting forth the basis for the default judgment against the Ortizes).

B. *Service on Pacific Rim Traders*

Plaintiff served Pacific Rim Traders, a New Zealand entity, by serving the registered agent of

its Florida agent, Global Supply Source, Inc., on April 11, 2012.  Doc. 51.  Plaintiff also sent a copy

of the process and notice of service to the non-resident business by certified mail, return receipt

requested.  Doc. 110-1 ¶ 5.  No return receipt has been received to date.  Doc. 110-1 ¶ 8.

Section 48.071 of the Florida Statutes governs service of process upon agents of non-residents

doing business in the state, and provides that "any process so served is as valid as if served personally

on the nonresident person or partnership engaging in business in this state in any action against the

person or partnership arising out of such business. A copy of such process with a notice of service on

the person in charge of such business shall be sent forthwith to the nonresident person or partnership

by registered or certified mail, return receipt requested. An affidavit of compliance with this section

shall be filed before the return day or within such further time as the court may allow."  Fla. Stat.

§ 48.071.  On June 8, 2012, the clerk entered a default against Pacific Rim Traders (Doc. 56) and

Plaintiff's counsel filed the appropriate affidavit on October 26, 2013.  Doc. 110.

C. *The Joslins and Global Supply Source, Inc.*

There is no dispute that Charles and Kerri Joslin and Global Supply were properly served,

filed answers, and were being defended by counsel; however, because they failed to participate in

---

[3]Plaintiff previously obtained an order granting an extension of the notice of *lis pendens* against the property of Charles and Kerri Joslin, who have not defaulted in the case, until further order of the Court following litigation of the claims against them.  *See* Docs. 65, 67, 75.

[4]Previously, on March 4, 2013, Mr. Ortiz was arrested in this District on a criminal complaint from the Western District of New York arising out of the same operative facts.  *See United States v. Ortiz*, Case No. 6:13-mj-1106-GJK-1.

discovery and failed to communicate with counsel in their defense, the ended up being defaulted as a sanction.  On July 23, 2013, Plaintiff filed Unopposed Motions to Compel Defendants Global Supply Source, Inc., Charles L. Joslin and Kerri G. Joslin to Respond to Plaintiff's First Requests for Production.  Docs. 90, 91, 92.  Plaintiff's counsel contacted Defendant's then-counsel, Michael Appleton, Esq., pursuant to Local Rule 3.01(g) to discuss the Motions to Compel, and Mr. Appleton advised that he intended to withdraw from representing Global Supply Source, Inc., Charles Joslin, and Kerri Joslin  due to lack of communication from his client and consequently had no grounds on which to oppose the motion.  *See* Docs. 90, 91, 92, Ex. B.

On August 2, 2013, the Court granted Plaintiff's Motions and ordered Defendants to show cause by August 16, 2013 why sanctions, including default, should not be imposed against them for failing to participate in discovery and for failing to cooperate with their counsel in defending the claims against them.  Doc. 94.  Defendants did not provide the discovery as ordered and failed to file a response to the Order to Show Cause.  On August 15, 2013, Defendants' counsel, Michael Appleton filed a Motion to Withdraw as counsel for Global Supply Source, Inc., Charles Joslin and Kerri Joslin, in which he stated, "Defendants have failed to respond to communications from counsel for a period in excess of 90 days, including communications by letter, telephone calls and email transmissions." Doc. 95.  In addition, counsel informed Defendants on several occasions "that he would seek leave to withdraw unless they cooperated in the defense of the action."  On August 20, 2013, the Court issued an Order to Show Cause, with a response due by September 3, 2013, why counsel's motion to withdraw should not be granted as to Defendants Charles L. Joslin and Kerri G. Joslin[5]; it was subsequently granted on September 11, 2013.  Docs. 97, 100.  The Court further reminded Defendants that the Court's previous Order granting Plaintiff's Motion to Compel Discovery (Doc. 94) subjected

---

[5]Mr. Appleton filed a Notice on August 20, 2013 stating that he had served by mail a copy of the Order. Doc. 98.

them to being sanctioned, including default, for their failure to participate in discovery and for failing to cooperate with their counsel in defending the claims against them.  Doc. 97.

On August 27, 2013, Plaintiff filed its Motion for Sanctions for Defendants' failure to produce the previously-ordered discovery.  Doc. 99.   Because Defendants failed to participate in discovery or to communicate with their counsel, despite being repeatedly ordered to do so by the Court, and failing any explanation for their failure to comply with the Courts' orders,  the striking of pleadings and entry of default was warranted against them. *See* Doc. 102.  On October 7, 2013, the Court entered an Order striking the pleadings and ordering the Clerk to enter defaults against the three remaining Defendants at issue – Global Supply Source, Inc., Charles L. Joslin and Kerri G. Joslin (Doc. 102), and on October 8, 2013, the Clerk entered defaults against them.  Docs. 103, 104, 105. On October 26, 2013, Plaintiff moved for Default Judgment against Global Supply Source, Inc., Charles L. Joslin and Kerri G. Joslin, and for final judgment against all of the remaining previously-defaulted Defendants.  Doc. 109.  No response to the Motion has been filed.

## II. *Legal Standard for Motion for Final Default Judgment*

Before the court may enter a final default judgment, the clerk must enter a default when the "party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." FED. R. CIV. P. 55(a); *see also Solaroll Shade & Shutter Corp. v. Bio-Energy Sys.*, 803 F.2d 1130, 1134 (11th Cir. 1986) ("Rule 55 applies to parties against whom affirmative relief is sought who fail to 'plead or otherwise defend'" (citation omitted)).  Notwithstanding the entry of default by the clerk, "a defendant's default does not in itself warrant the court in entering a default judgment." *Nishimatsu Constr. Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)[6].

---

[6]All decisions of the United States Fifth Circuit Court of Appeals before October 1, 1980 which have not been overruled by the United States Eleventh Circuit Court of Appeals are binding on federal courts situated in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

Therefore, the court must evaluate whether it is proper to enter a default judgment. For example, if a defendant never appears or answers a complaint, then the "case never has been placed at issue[,]" and thus, the court may enter a default judgment. *Solaroll Shade & Shutter Corp.*, 803 F.2d at 1134. However, prior to entering a default judgment, the court must verify that the complaint is well pleaded because "[a] 'defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, and is barred from contesting on appeal the facts thus established.'" *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc*., 561 F.3d 1298, 1307 (11th Cir. 2009) (citations omitted); *Nishimatsu Constr. Ltd.*, 515 F.2d at 1206 ("There must be a sufficient basis in the pleadings for the judgment entered.").

To determine if a plaintiff's complaint is well-pleaded, the court considers Rule 8(a)(2) of the Federal Rules of Civil Procedure and the standard set forth in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) (explicating *Bell Atl. Corp v. Twombly*, 127 S.Ct. 1955 (2007)). According to Federal Rule of Civil Procedure 8(a)(2), to state a claim for relief, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Thus, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 127 S.Ct. at 1947). In other words, the allegations in the complaint need to be sufficient "to 'raise a right to relief above the speculative level' on the assumption that all the allegations in the complaint are true." *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (citing *Twombly*, 127 S.Ct. at 1965). Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 129 S.Ct. at 1949 (citation omitted).

### III. Background Facts

Plaintiff Sweeteners Plus, Inc., is a New York corporation in the business of purchasing sugar for resale in bulk quantities. Doc. 42 ¶ 4. On May 4, 2011, Sweeteners entered into an agreement

with Fastforward, a division of 1411347, Ontario Limited, a Canadian company, for the purchase of 12,500 metric tons (MT) of sugar; Fastforward subsequently assigned its rights and obligations under the agreement to Archangel Trading and Archangel World Investment, Inc. (collectively "Archangel") and Archangel accepted those obligations, subject to letter modifications. Doc. 42 ¶ 13. Archangel further acknowledged its contract obligation in an International Chamber of Commerce Non-Circumvention, Non-Disclosure & Working Agreement ("ICC 400/500/600"). On September 21, 2011, Archangel issued a Pro Forma Invoice reciting the terms of the agreement for the sugar purchase. Doc. 42 ¶ 13, Ex. A, Purchase Agreement[7].   Doc. 42 ¶ 13.

As part of the Purchase Agreement, Sweeteners was required to deposit in escrow $7,862,500 (the "Purchase Price") pursuant to a Paymaster Agreement, as approved by Sweeteners in an email. Doc. 42 ¶ 14, Ex. B[8].  Sweeteners is a real party in interest and thus a third party beneficiary of the Paymaster Agreement.  Doc. 42 ¶ 15.  On September 21, 2011, Sweeteners deposited the Purchase Price in escrow into the Trust Account of Attorney Claire Ambrosio, the "Paymaster" named in the Paymaster Agreement.  Doc. 42 ¶ 146.  On the delivery to the "Paymaster" and to Sweeteners of the original shipping documents listed in Paragraph 10 of Exhibit B to the Paymaster Agreement (the "Shipping Documents") the Paymaster was authorized to release the deposited funds to Ortiz, on behalf of Archangel. Doc. 42 ¶ 17.

---

[7]The Purchase Agreement consists of (1) the May 4, 2011 Agreement between Fastforward and Sweeteners; (2) the August 31, 2011 Fastforward assignment email; (3) the undated Archangel letter of acceptance and price modification; (4) the September 22, 2011 ICC 400/500/600; and (5) the September 21, 2011 Pro Forma Invoice marked "Paid."

[8]The Paymaster Agreement consists of (1) the September 14, 2011 Paymaster Agreement; (2) the September 21, 2011 e-mail confirmation of Paymaster Agreement terms by Sweeteners; (3) the August 31, 2011 Fastforward assignment email.

-7-

However, on September 21, 2011, Hector Ortiz[9], as Vice-President and General Manager of Archangel, and Charles Joslin[10] on behalf of Defendants Global Supply Source, Inc., and Pacific Rim Traders, falsely represented that they had obtained the Shipping Documents.  Doc. 42 ¶ 7, 9-12, 18. Without presenting or surrendering the Shipping Documents and, contrary to the Paymaster Agreement, Ortiz and/or Joslin persuaded the Paymaster to break the escrow and release $7,216,694 of the Purchase Price, to two accounts within Defendants' control. Doc. 42 ¶ 19.

In actuality, Ortiz, Archangel, Joslin, nor Global had obtained the "Shipping Documents" and therefore never possessed them. Doc. 42 ¶ 20.  After payment of the Purchase Price to the Paymaster, Sweeteners discovered that Archangel was not the direct supplier of the sugar; but instead, Archangel purportedly had an agreement with a joint venture involving Global under which the sugar would be supplied. Doc. 42 ¶ 21.  Subsequent to the disbursement of the above funds, Archangel, Global, Joslin, and Ortiz, represented that the sugar had been loaded in Brazil aboard various vessels in the Hans Carrier Line[11]. Doc. 42 ¶ 22 & Ex. C. However, Archangel never surrendered to Sweeteners any of the Shipping Documents for any of the vessels on which it claimed the sugar had been loaded in Brazil. Doc. 42 ¶ 22.   After repeated demands, Archangel, Ortiz, Joslin, and Global failed to return the funds disbursed in violation of the Paymaster Agreement; to provide the Shipping Documents; or to deliver the sugar to Sweeteners. Doc. 42 ¶ 23.

The majority of the funds used to purchase the home of Charles Joslin and Kerri Joslin are traceable to Sweeteners[12].   Doc. 42 ¶ 79; Doc. 109-1¶ 8.  The Paymaster Claire Ambrosio, released $7,216,694 of the Purchase Price to the following two accounts within Defendants' control:

---

[9]Miriam Ortiz is the wife of Hector Ortiz.

[10]Kerri Joslin is the wife of Charles Joslin.

[11]Nord Voyager, Yan An Hai, Ocean Leader, and Luzern.

[12]The details of the fraudulent use of funds by Mr. Ortiz to purchase his home is set forth in the previous Report and Recommendation.  Doc. 89.

$6,187,490 to the account of Global Supply Source, Inc. at TD Bank[13] in Altamonte Springs, Florida; and $852,500 to the account of Hector Ortiz and Miriam Ortiz at Vantage Credit Union[14].  Doc. 42 ¶ 19.  Prior to the September 22, 2011 transfer from Claire Ambrosio, the balance in TD account 3628 was $100.  Doc. 109-1 ¶ 8c.  On September 22, 2011, Joslin made the following transfers: $6,187,490 from TD Account 3628 to TD Account 3441 and $1,200,000 from TD account 3441 to TD Account 3320.  Doc. 109-1 ¶ 8d.

On October 11, 2011, Joslin wired $400,000 from TD account 3320 to Watermark Realty, located in Stuart Florida, with the notation, "#7511 Joslin 1410 N. Fork Road." Doc. 109-1, Exh. 5. On November 21, 2011, Joslin wired $1,200,000 from TD Account 3320 to Chase Account 4732. Doc. 109-1, Exh. 6 & 7.  On November 29, 2011, Joslin wired $1,277,369.08 from Chase Account 4732 to the law office of Christopher J. Twohey, P.A, located in Stuart Florida, with the notation, "Fiorella/Joslin." Doc. 109-1, Exh. 7.  The property records of Martin County, Florida indicate that John N. Fiorella and Sharon G. Fiorella, husband and wife, conveyed the following real property to the Charles L. Joslin and Kerri G. Joslin, husband and wife, on December 1, 2011, on a deed prepared by Christopher J. Twohey, P.A. for consideration in the sum of $1,675,000.00 – Lot 4, Block 1 of Section 1, Cocoanut Park, according to the Plat thereof, as recorded in Plat Book 2, Page 70, Public Records of Martin County, Florida – with the street address of 1410 NW Fork Road, Stuart, Martin County, Florida[15]. Doc. 109-1 ¶ 9, Exh. 8. Despite Sweeteners' demand, Charles Joslin and Kerri Joslin have refused to return any portion of the $7,862,500 to the Paymaster account.  Doc. 42 ¶ 64, 67-69.

---

[13]TD Bank, NA, 514 E Altamonte Dr., Altamonte Springs, FL 32701, Account ending in 3628.

[14]Vantage Credit Union, 4020 Fee Road, Bridgeton, MO 63044; Account ending in 0669.

[15]Similarly, the funds to purchase the Ortiz homestead were obtained by Mr. Ortiz's fraud as detained in the Court's prior orders. *See* Docs. 89, 96

As to damages, Sweeteners paid $7,216,694 for sugar that was never delivered.  Doc. 109-2 ¶ 4.  Sweeteners has suffered an additional $5,909,875, in damages. Doc. 109-2 ¶ 5.  Sweeteners now seeks a default judgment against Charles Joslin, Global Supply Source, and Pacific Rim Traders, jointly and severally, for damages in the amount of $13,126,669, together with prejudgment interest, costs and attorneys fees; and an equitable lien against Charles and Kerri Joslin, husband and wife, on the homestead property of 1410 NW Fork Rd., Stuart, Florida.

### III. Analysis

A. *Fraud*

To prove fraud against Charles Joslin, Global Supply Source, and Pacific Rim Traders[16], Sweeteners must demonstrate: (1) a false statement concerning a specific material fact; (2) the maker's knowledge that the representation is false; (3) an intention that the representation induces another's reliance; and (4) consequent injury by the other party acting in reliance on the representation. *Wadlington v. Continental Med. Servs., Inc.*, 907 So.2d 631, 632 (Fla. 4th DCA 2005) (citing *Cohen v. Kravit Estate Buyers, Inc.*, 843 So.2d 989, 991 (Fla. 4th DCA 2003)).

In this case, the Paymaster Agreement required that the funds deposited by Sweeteners were to be held until the Shipping Documents were delivered to the Paymaster and Sweeteners; only at that time could the funds be released to Archangel.  Doc. 42 ¶ 40.  Despite the terms of the Paymaster Agreement, Ortiz, on behalf of Defendant Archangel World Investments, Inc., knowingly misrepresented to the Paymaster/ escrow agent who was holding Sweetener's funds, Claire Ambrosio, that Archangel, Ortiz, Joslin and/or Global, on its own behalf and as agent for Pacific Rim, had obtained the Shipping Documents required to be presented before disbursing the escrowed Purchase Price, that surrender of the documents was not necessary, and that she could release the $7,216,694

---

[16]Sweeteners has already obtained a ruling finding a fraud judgment and constructive trust are due to be entered against Hector Ortiz and the homestead property owned by Hector and Miriam Ortiz.  *See* Doc. 96.

held on behalf of Sweeteners to him and others.  Doc. 42 ¶ 41.  Ortiz, Joslin, and Global, on its own behalf and as agent for Pacific Rim, fraudulently misrepresented to the Paymaster that title to the goods for which the funds in the escrow account had been deposited were now transferred to Sweeteners and that the goods aboard seagoing vessels belonged to Sweeteners. Doc. 42 ¶ 42.  In reliance on the foregoing misrepresentations, the Paymaster, on behalf of Sweeteners, released the escrowed funds.  Doc. 42 ¶ 43.  Ortiz, Joslin, and Global, on its own behalf and as agent for Pacific Rim,  further fraudulently misrepresented that the funds that were removed from the escrow account would be returned to the account. Doc. 42 ¶ 44 & Ex. E.  Sweeteners is entitled to default judgment on its fraud claim (Count III) against Hector Ortiz, Charles Joslin, Global Supply Source, Inc., and Pacific Rim Traders.

B. *Equitable Lien*

Sweeteners contends that it is entitled to the imposition of an equitable lien upon the homestead property of Charles and Kerri Joslin at 1410 NW Fork Rd., Stuart, Florida, and to foreclose the lien because the home was purchased partially with the funds fraudulently obtained from Sweeteners by Charles Joslin. Doc. 109 (citing *See In re Financial Federated Title and Trust, Inc.*, 347 F.3d 880, 888 (11th Cir. 2003)).  It is well-settled under Florida law that the homestead "cannot be employed as a shield and defense after fraudulently imposing on others." *Jones v. Carpenter*, 90 Fla. 407, 106 So. 127, 130 (Fla. 1925); *Craven v. Hartley*, 102 Fla. 282, 135 So. 899 (Fla. 1931); *LaMar v. Lechlider*, 135 Fla. 703, 185 So. 833 (Fla. 1939);  *Palm Beach Savings & Loan Association, F.S.A. v. Fishbein*, 619 So.2d 267, 270 (Fla. 1993) ("Where equity demands it this Court has not hesitated to permit equitable liens to be imposed on homesteads beyond the literal language of [the Florida Constitution,] Article X, Section 4."); *cf. Havoco of America, Ltd. v. Hill*, 790 So.2d 1018 (Fla. 2001) (holding the equitable lien as imposed in *Jones* is still a viable remedy for creditors in cases where funds obtained fraudulently were used directly to purchase a homestead).

Although homestead real estate is generally protected from creditors by Florida's Constitution Article X, Section 4, courts have recognized an exception to the homestead protection when the property was acquired with funds generated by fraudulent activity, and a constructive trust or equitable lien is necessary to prevent unjust enrichment. *See, e.g., In re Financial Federated Title & Trust, Inc.*, 347 F.3d 880, 881 (11th Cir. 2003) (holding that the Florida Constitution does not protect a homestead purchased with fraudulently obtained funds from an equitable lien or constructive trust ); *LaBelle v. LaBelle*, 624 So.2d 741, 742 (Fla. 5th DCA 1993) (stating, "[T]he protection[s] afforded by Article X, Section 4 of the Florida Constitution . . . do not apply to properties which are purchased with fraudulently obtained, traceable proceeds and which are, therefore, subject to the imposition of a constructive trust."); *Zureikat v. Shaibani*, 944 So.2d 1019, 1024 (Fla. 5th DCA 2006) (affirming an equitable lien placed on a homestead where proceeds obtained from fraudulent or reprehensible conduct were used to invest in, purchase, or improve the homestead).

The exception to homestead protection applies even "where funds obtained through one spouse's fraud are used to invest in, purchase, or improve the homestead . . . despite the other spouse's innocence or ignorance of wrongdoing." *Zureikat*, 944 So.2d at 1024 (citing *Palm Beach Savings & Loan Ass'n v. Fishbein*, 619 So.2d 267 (Fla.1993)). An equitable lien may be foreclosed against homestead property purchased with funds obtained by fraud. *See Babbit Electronics v. Dynascan Corporation*, 915 F. Supp. 335 (S.D. Fla. 1995).

In support of these damages, Sweeteners has submitted the uncontroverted affidavit of Mark Whitford, Vice President of Sales and Marketing for Sweeteners Plus, Inc. Doc. 109-2. Mr. Whitford attests that Sweeteners paid $7,216,694 on September 21, 2011 for sugar that was never delivered to Sweeteners; on November 14, 2011, Ambrosio returned $645,806 in undisbursed funds to Sweeteners. Doc. 109-2 ¶¶ 4, 5. In addition, Sweeteners has suffered an additional $5,909,875, in damages. Doc. 109-2 ¶ 5. Sweeteners contracted with a supplier in the United States to cover the volume of sugar

not provided by Archangel World Investment, Inc., and the purchase price of the sugar was $1,146.39 per metric ton, but the agreement with Archangel World Investment was for $700 per metric ton, thus, the cost difference was $5,579,875.  Doc. 109-2 ¶ 5c.  Sweeteners also erected a new building, and purchased unloading equipment to handle the bulk sugar ordered from Archangel World Investment; the total cost for the building and equipment was $330,000.  Doc. 109-2 ¶ 5d.

More than three-quarters of the funds[17] to purchase the Joslin homestead were obtained by Charles Joslin through fraud committed against Sweeteners, and the funds are directly traceable to the fraud of Charles Joslin.  As such, Sweeteners is entitled to an equitable lien on the Property at 1410 NW Fork Rd., Stuart, Florida without regard to the homestead designation of Charles Joslin.  *See In re Financial Federated,* 347 F.3d at 892 (where plaintiff could trace over 90% of the funds used to purchase the defendant's homesteaded property to his fraud, plaintiff was entitled to the imposition of a constructive trust on the homestead property).  Although there is no evidence that Kerri Joslin, Charles Joslin's spouse participated in the fraud, she unjustly benefitted by receiving title to the property purchased with Sweeteners' funds; thus, there is no homestead protection inuring to interest of Kerri Joslin in the property.  *See Zureikat*, 944 So. 2d at 1024; *In re Financial Federated,* 347 F.3d at 890-91 (spouse's lack of knowledge or involvement in the fraudulent activity does not exonerate her from liability; "it is the fraudulent nature of the funds which is of utmost importance.").

The allegations and the proof establish that Charles Joslin owes Sweeteners the amount asserted, and entry of a judgment is appropriate. *See* FED. R. CIV. P. 55(b)(2) (where the amount of damages is an ascertainable sum certain, a separate hearing is not necessary on the issue of damages); *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp*., 109 F. 3rd 105, 111 (2d Cir. 1997)

---

[17]The sum of $1,277,369 million traced to Sweeteners divided by the $1.675 million purchase price is 76%. *See* Doc. 109 ¶ 18.

("it [is] not necessary for the district court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the default judgment").

### C. Fact Information Sheet

Sweeteners again seeks to have the Court order the individual Defendants, Charles and Kerri Joslin, to complete a  Fact Information Sheet in aid of execution pursuant to Florida Rule of Civil Procedure 1.560(c).  As the Court explained previously, a federal court is generally not bound by state court rules, however proceedings supplementary to and in aid of judgment or execution must accord with the procedure of the state where the court is located, and federal statues govern to the extent any apply.  Doc. 89 (citing Fed. R. Civ. P. 69(a)).  Despite the Court's previous ruling, Sweeteners has not cited any new or federal legal authority requiring the Fact Information Sheet in this Court.

# CONCLUSION

It is respectfully **RECOMMENDED** that Sweeteners' Motion for Default Judgment be **GRANTED** as follows:

1. To allow entry of the final default judgment in Sweeteners's favor against Hector Ortiz, Global Supply Source, Inc., Pacific Rim Traders, and Charles Joslin, jointly and severally, for damages in the amount of $13,126,669.00, together with prejudgment interest, costs and attorneys fees;

2. To allow a constructive trust against Hector Ortiz and Miriam Ortiz, husband and wife, to be entered on the 9481 McAneeny Court Property, Wellington, Florida, as well as an order transferring title to the Property; and

3. To allow an equitable line against Charles L. Joslin and Kerri G. Joslin, husband and wife, be entered on the Property at 1410 NW Fork Rd., Stuart, Florida., and ordering them to satisfy the equitable lien within 30 days, and if the lien is not satisfied, then allowing Plaintiff to foreclose the lien without further order of this Court, and ordering them, as constructive trustees, to commit no act

with the intent to damage, or otherwise diminish the value of, the Property at 1410 NW Fork Rd.,

Stuart, Florida, and to reasonably preserve the Property in its present condition until such time as

transfer of title and possession is effectuated.

It is further **respectfully RECOMMENDED** that Sweeteners be given the opportunity **to file**

**a proposed order** on the final default judgment.

Respectfully recommended this 11th day of December, 2013.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record